In re Nicholas P. HEILMAN, Debtor.

Pam Heilman, Appellant,

v.

Nicholas P. Heilman, Appellee.

BAP No. EW–09–1150–HMoPa.
Bankruptcy No. 05–08319–PCW.
Adversary No. 08–80093–PCW.

United States Bankruptcy Appellate Panel
of the Ninth Circuit.

Submitted Without Oral Argument
on Nov. 24, 2009.

Filed April 26, 2010.

Timothy W. Durkop, Spokane Valley, WA, for Pam Heilman.

Erik S. Bakke, Johnson, Gaukroger, Drewelow & Woolett, Wenatchee, WA, for Nicholas Heilman.

Before: HOLLOWELL, MONTALI and PAPPAS, Bankruptcy Judges.

## OPINION

HOLLOWELL, Bankruptcy Judge.

The parties to this appeal are former spouses. Approximately six months prior to their divorce, Nicholas Heilman (the Debtor) filed, individually, for chapter 7[1] bankruptcy relief and received a discharge. Pam Heilman (Heilman) later sought a declaratory judgment against the Debtor to declare that the Debtor was obligated, by the terms of their dissolution decree, to hold Heilman harmless on a prepetition community debt owed to Heilman's parents. The bankruptcy court held that the loan to Heilman's parents had been discharged and therefore, Heilman could not be held harmless for a nonexistent obligation. For the reasons given below, we AFFIRM.

## I. FACTS

The Debtor and Heilman were married in April 2002. During their marriage, from March through December 2004, Heilman's parents, Richard and Laurel Beyer (the Beyers), loaned Heilman approximately $42,000 for the primary purpose of supporting Heilman's daughter (the Beyer Loan).

On October 3, 2005, the Debtor filed an individual chapter 7 bankruptcy petition. A review of the bankruptcy case docket and underlying bankruptcy schedules reveals that the Debtor did not list the Beyer Loan on his schedules or include the Beyers on the creditor mailing matrix.[2] The Debtor's case was a no-asset case and he received a discharge on January 11, 2006.

Approximately seven months later, on June 9, 2006, Heilman filed a Petition for Dissolution of Marriage in Washington State Superior Court for Lincoln County. The marriage was dissolved by an agreed Decree of Dissolution on September 19, 2006 (the Dissolution Decree). The Dissolution Decree allocated certain debts to the Debtor. It identified the Beyer Loan as one of four "Community Liabilities to be Paid by the Husband." The Dissolution Decree did not allocate any community liabilities to Heilman. The separate liabilities for each spouse were described only as those obligations that were incurred prior to the marriage or after Heilman and the Debtor separated. The Dissolution Decree also contained a provision that each spouse would hold the other harmless from any collection action relating to the separate or community liabilities that were allocated to the parties in the Dissolution Decree (the Hold Harmless Provision).

On August 15, 2008, Heilman filed an adversary proceeding against the Debtor seeking a declaratory judgment that the

---

**1.** Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330, and to the Federal Rules of Bankruptcy Procedure, Rules 1001–9036, as enacted and promulgated prior to the effective date of The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, 119 Stat. 23, because the case from which this appeal arises was filed before its effective date (generally October 17, 2005).

**2.** We may take judicial notice of the underlying bankruptcy records with respect to an appeal. *O'Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.)*, 887 F.2d 955, 957–58 (9th Cir.1989).

Hold Harmless Provision obligated the Debtor to indemnify her for any demands made on her to pay the Beyer Loan.

Heilman filed a motion for summary judgment on February 3, 2009. On March 17, 2009, the Debtor filed a Memorandum of Authorities in Support of Answer to Complaint for Declaratory Judgment Regarding Discharge of Debt. The bankruptcy court heard the matter on March 24, 2009, and denied the motion for summary judgment on March 25, 2009. The parties subsequently agreed to have the bankruptcy court decide the matter on pleadings and a trial was vacated. On April 23, 2009, the bankruptcy court entered an Order Dismissing the Adversary Proceeding and issued its decision finding that the community obligations referenced in the Dissolution Decree had been discharged and the Hold Harmless Provision could not revive a discharged debt. *Heilman v. Heilman (In re Heilman)*, 2009 WL 1139468 (Bankr.E.D.Wash.2009). Heilman timely appealed.[3]

## II. JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. § 157(b)(1). We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUE

Does the Dissolution Decree obligate the Debtor to pay the Beyer Loan or to hold Heilman harmless for the Beyer Loan?[4]

3. Prior to the scheduled oral argument on appeal, the Debtor passed away, and the matter was submitted on the briefs. The Debtor's death does not affect our decision. The parties rights, including the right of the Debtor to obtain a fresh start post-bankruptcy, were fixed as of the date of bankruptcy.

4. To the extent Heilman also argues that the Debtor was obligated to directly pay the Beyer Loan as a community obligation as set forth by the Dissolution Decree, we include this issue in the appeal, although the briefing seems to mainly reference whether the Hold

## IV. STANDARDS OF REVIEW

■ We review a bankruptcy court's legal conclusions, including its interpretation of the bankruptcy code and state law, de novo. *Hopkins v. Cerchione (In re Cerchione)*, 414 B.R. 540, 545 (9th Cir. BAP 2009). We may affirm the bankruptcy court on any basis supported by the record. *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295 (9th Cir.1998).

## V. DISCUSSION

Heilman contends that the Dissolution Decree ordered the Debtor to pay the Beyer Loan as well as to hold her harmless should the Beyers seek collection from her on the loan. She asserts the Hold Harmless Provision of the Dissolution Decree created a postpetition claim to her that was not discharged in the Debtor's bankruptcy case.[5]

After analyzing the nature of the Beyer Loan and the effect the bankruptcy discharge had on the parties' liability for the Beyer Loan, we conclude the Dissolution Decree did not create a postpetition claim, but rather attempted to revive a discharged debt.

### A. The Beyer Loan Was A Prepetition Community Debt Subject To The Debtor's Discharge

■ The Debtor and Heilman resided in Washington when the Debtor's bankruptcy

Harmless Provision is enforceable as to the Beyer Loan.

5. A chapter 7 discharge is effective only as to "debts that arose before the date of the order for relief...." 11 U.S.C. § 727(b). In a voluntary case, the order for relief occurs at the moment of filing. 11 U.S.C. § 301. Therefore, debts arising after the bankruptcy case has commenced are not discharged. *See, e.g., Teichman v. Teichman (In re Teichman)*, 774 F.2d 1395, 1398 (9th Cir.1985).

petition was filed; therefore, whether the Beyer Loan is a community debt is determined by Washington law. *Fed. Deposit Ins. Corp. v. Soderling (In re Soderling),* 998 F.2d 730, 733 (9th Cir.1993).[6] Under Washington law, a debt incurred by either spouse during marriage is presumptively a community debt. *Seattle First Nat'l Bank v. Marusic (In re Marusic),* 139 B.R. 727, 731 (Bankr.W.D.Wash.1992); *Burman v. Homan (In re Homan),* 112 B.R. 356, 360 (9th Cir. BAP 1989).

> One rather constant theme is the solicitude with which the Washington court has viewed the community property position, manifested in various rules and presumptions: acquisitions by a spouse are presumptively community property; separate property commingled with community property becomes community property by operation of law; obligations incurred by a spouse are presumptively community in character; separate property agreements between spouses must be established by a higher standard of proof than that required to establish community property agreements, and so forth.

Harry M. Cross, *The Community Property Law in Washington,* 61 Wash. L.Rev. 13, 19 (1986).

■ Furthermore, debts incurred by either spouse are considered to be community debts if, at the time of the transaction, there was a potential material benefit to the community. *Grayson v. Platis,* 95 Wash.App. 824, 836, 978 P.2d 1105 (Wash. Ct.App.1999); *In re Marusic,* 139 B.R. at 731. The Beyers loaned money to Heilman during the marriage to help care for their grandchild. The Beyer Loan provid-

ed a material benefit to the community because it alleviated the community's financial burden of providing support for that child. Neither party has argued otherwise. Thus, in the absence of any evidence to the contrary, the Beyer Loan was a community debt.

The community's liability on expenses "of the family and the education of the children, including step-children," including those items required for sustenance, support and ordinary requirements of a family, is joint and several. RCW 26.16.205 ("[Family expenses] are chargeable upon the property of both [husband and wife], or either of them, and they may be sued jointly or separately."); *Sunkidd Venture, Inc. v. Snyder–Entel,* 87 Wash. App. 211, 216, 941 P.2d 16 (Wash.Ct.App. 1997).

■ Divorce courts are "charged with making a just and equitable disposition of the parties' property and liabilities after considering all relevant factors." *In re Marriage of Thomas,* 63 Wash.App. 658, 660, 821 P.2d 1227 (Wash.Ct.App.1991); RCW 26.09.050(1) & 26.09.080. Absent the Debtor's bankruptcy, the divorce court could have properly assigned the community's liability for the Beyer Loan to the Debtor and protected Heilman from payment on the Beyer Loan through the Hold Harmless Provision. However, the entry of the Debtor's discharge bars such a result.

In bankruptcy, community claims are defined as claims that "arose before the commencement of the case concerning the debtor for which property of the kind specified in [§ 541(a)(2) ] is liable." 11 U.S.C. § 101(7). Property specified in § 541(a)(2)

---

**6.** Under § 541(a)(2) community property in existence as of the petition date becomes estate property; therefore, it is appropriate to refer to the law of the state where the debtor and his or her spouse lived at the time the petition was filed in determining whether the Beyer Loan was a community debt or Heilman's separate debt. *In re Soderling,* 998 F.2d at 733.

includes all interests of the debtor and debtor's spouse in community property liable for an allowable claim against the debtor and the debtor's spouse. 11 U.S.C. § 541(a)(2). Because the Debtor and Heilman's marital community was liable for the Beyer Loan, the Beyers held a community claim against the Debtor, which was subject to his bankruptcy discharge.

Additionally, because the obligation was joint and several, at the time the Debtor and Heilman incurred the debt, Heilman was entitled to a contribution claim from the Debtor. *Sunkidd Venture*, 87 Wash. App. at 217, 941 P.2d 16. Thus, on the petition date, Heilman held a contingent claim against the Debtor for contribution on the Beyer Loan.[7] 11 U.S.C. § 101(5).

### 1. The Discharge Extinguished The Debtor's Personal Liability on Prepetition Claims

■ Section 727(b) provides that (except for non-dischargeable debts listed in § 523(a))[8] a discharge under § 727(a) discharges a debtor from all debts that arose before bankruptcy (regardless of whether, in the instance of a no-asset chapter 7 case, the debt was listed in a debtor's schedules). 11 U.S.C. § 727(b); *Beezley v. Cal. Land Title Co. (In re Beezley)*, 994 F.2d 1433, 1434 (9th Cir.1993). The bankruptcy discharge releases the debtor from liability on debts and enjoins any creditor's effort to collect a discharged debt as a personal liability of the debtor. 11 U.S.C. § 727(b) and § 524(a)(1), (a)(2); *see also Lone Star Sec. & Video, Inc. v. Gurrola (In re Gurrola)*, 328 B.R. 158, 163–64 (9th Cir. BAP 2005). As a result, the Debtor's liability for community debts, including the Beyer Loan, and his contingent liability to Heilman for contribution for payments she may have to make on the Beyer Loan, were extinguished when he received his discharge. 11 U.S.C. § 524(a)(1), (a)(2).

### 2. The Discharge Enjoined Collection Efforts Against The Community

■ Additionally, under § 524(a)(3), the discharge protected postpetition community property from collection efforts by any creditor holding a prepetition community claim because a discharge permanently enjoins enforcement of prepetition community claims against all future-acquired community property:

[A] nondebtor spouse in a community property state typically benefits from

---

7. A claim is defined as a:
 right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or [a] right to an equitable remedy for breach of performance if such breach gives rise to a right to payment. . . .

 11 U.S.C. § 101(5). The breadth of the definition ensures that "all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case." *In re Emelity*, 251 B.R. 151, 154 (Bankr.S.D.Cal.2000) *citing In re Hassanally*, 208 B.R. 46, 50 (9th Cir. BAP 1997).

8. Section 523(a)(15) is not applicable to this case because for a debt to be nondischargeable under § 523(a)(15) it must be incurred

"in the course of a divorce or separation." Here, on the petition date, there was no divorce or separation in progress. Accordingly, this case presents a result based exclusively on timing. If the Debtor's divorce had preceded his bankruptcy, the Hold Harmless Provision of the Dissolution Decree would be enforceable, at least until discharge, unless § 523(a)(15) applied and rendered it nondischargeable.

We share the dissent's concern about such a result, but cannot agree with the dissent's reasoning that the Hold Harmless Provision was a new postpetition obligation given the broad definition of a claim in § 101(5) and given the language of the Dissolution Decree itself which does not reference Heilman's separate liability on the Beyer Loan in the Hold Harmless Provision.

the discharge of the debtor spouse. According to Section 524(a)(3), after-acquired community property is protected by injunctions against collection efforts by those creditors who held allowable community claims at the time of filing. This is so even if the creditor claim is against only the nonbankruptcy spouse; the after-acquired community property is immune.

*Rooz v. Kimmel (In re Kimmel)*, 378 B.R. 630, 636 (9th Cir.BAP2007) *quoting In re Homan*, 112 B.R. at 360.

However, the discharge injunction of § 524(a)(3) only applies as long as there is community property. *In re Kimmel*, 378 B.R. at 636. Dissolution of the marriage terminates the community, at which point after-acquired community property loses its protection. *Id. citing*, 4 COLLIER ON BANKRUPTCY, ¶ 524.02[3][c] (Alan N. Resnick & Henry J. Sommer, eds., 15th ed. rev.2007).

> 3. *The Debtor's Discharge Did Not Discharge Heilman From Her Separate Liability On Community Claims*

■ After the Debtor's bankruptcy discharge, Heilman continued to remain separately liable for community debts, including the Beyer Loan. Her separate property (and any community property ultimately distributed to her when the community finally dissolved) was, therefore, subject to collection by a creditor holding a community claim. *Von Burg v. Egstad (In re Von Burg)*, 16 B.R. 747, 749 (Bankr. E.D.Cal.1982); *Gonzales v. Costanza (In re Costanza)*, 151 B.R. 588, 589 (Bankr. D.N.M.1993). Heilman's separate liability on the Beyer Loan was not allocated to the Debtor by the Dissolution Decree or subject to its Hold Harmless Provision.

### B. The Dissolution Decree's Hold Harmless Provision Did Not Create A New Postpetition Obligation

■ The bankruptcy court found that by listing the Beyer Loan as a liability to be paid by the Debtor, the Dissolution Decree impermissibly attempted to revive the Debtor's personal liability for a discharged debt. We agree.

The combined effect of § 727(b) and § 524(a)(3) was to discharge both the Debtor and the community from liability for prepetition debt. The discharge also extinguished the Debtor's liability to Heilman for contribution claims she might have as a result of her surviving sole liability for prepetition community debt. The dissent strongly disagrees with this result, citing a number of decisions holding that debts established in postpetition divorce decrees are new debts not discharged in a debtor's bankruptcy case.[9]

■ None of the cases cited by the dissent, however, are from community property jurisdictions where members of the community are jointly and severally liable for community debt. Although one of the cases does address joint and several liability, it relied on state law to determine that the non-debtor spouse's contribution right arose post-bankruptcy. *Miller v. Miller (In re Miller)*, 246 B.R. 559, 563 (Bankr.E.D.Tenn.2000). It is well-settled in the Ninth Circuit that federal law determines when a claim arises under the Bankruptcy Code. *SNTL Corp. v. Centre Ins. Co. (In re SNTL Corp.)*, 571 F.3d 826, 839 (9th Cir.2009). For purposes of discharge,

---

**9.** There are also a number of decisions which hold that postpetition judgments entered in divorce actions commenced pre-bankruptcy, but concluded post-bankruptcy, do not create new nondischargeable debt. *See, e.g., DiGeronimo v. Weissberg (In re DiGeronimo)*, 354 B.R. 625, 637 n. 12 (Bankr.E.D.N.Y.2006) (collecting cases).

a claim arises "at the time of the events giving rise to the claim, not at the time plaintiff is first able to file suit on the claim." *O'Loghlin v. County of Orange*, 229 F.3d 871, 874 (9th Cir.2000). "[A] claim arises when a claimant can fairly or reasonably contemplate the claim's existence even if a cause of action has not yet accrued under nonbankruptcy law." *In re SNTL Corp.*, 571 F.3d at 839. Under that test, Heilman could have fairly contemplated that she had a reimbursement claim when the Beyers made the loan (and certainly by the date the Debtor filed his petition).

While the Hold Harmless Provision of the Dissolution Decree is broader than the Debtor's contribution liability, it nevertheless encompasses Heilman's contribution claim.[10] Therefore, the Hold Harmless Provision is based "in whole or in part ... on a debt that is dischargeable" and can only be revived if the reaffirmation requirements are met. 11 U.S.C. § 524(c); *see also, Edwards v. Edwards (In re Edwards)*, 91 B.R. 95, 96 (Bankr.C.D.Cal. 1988) ("In a marriage dissolution proceeding, one spouse cannot be required to pay obligations which have been discharged in bankruptcy.").

 The Code sets forth requirements that an agreement must meet in order to revive a discharged debt. 11 U.S.C. § 524(c). "Post-bankruptcy attempts to enforce pre-bankruptcy obligations in non-bankruptcy courts using nonbankruptcy law" is dealt with under § 524(c). *Renwick v. Bennett (In re Bennett)*, 298 F.3d 1059, 1066 (9th Cir.2002). An agreement

to reaffirm a debt must strictly comply with the statutory requirements. *Republic Bank of Cal., N.A. v. Getzoff (In re Getzoff)*, 180 B.R. 572, 574 (9th Cir. BAP1995).

Section 524(c) provides that agreements to reaffirm a dischargeable debt, when the consideration is no more than the promise to repay the debt, must be made before the granting of a bankruptcy discharge. 11 U.S.C. § 524(c). Furthermore, the agreement must be approved by the bankruptcy court, which determines that the debtor (1) knowingly and voluntarily entered into the agreement, (2) understood all of its legal consequences, and (3) that the agreement did not impose an undue hardship on the debtor. *Id.* The Dissolution Decree does not conform to any of these requirements. Instead, the Dissolution Decree circumvents the bankruptcy laws by reviving a discharged debt. *See In re Edwards*, 91 B.R. at 96. Therefore, the Debtor's obligation to pay the Beyer Loan or hold Heilman harmless on the Beyer Loan is void and unenforceable. *In re Gurrola*, 328 B.R. at 171 (Section 524 voids any judgment at the time it is obtained to the extent it is a determination of the personal liability of a debtor with respect to any debt discharged.); *In re Bennett*, 298 F.3d at 1067 ("Absent a valid reaffirmation agreement under [§ ] 524(c), [an] agreement to repay a discharged debt is unenforceable under [§ ] 524(a).").

Accordingly, we affirm the bankruptcy court's dismissal of the adversary proceeding.[11]

---

**10.** Because we agree with the bankruptcy court that there was no surviving prepetition community debt from which the Debtor had to hold Heilman harmless, the difference in the scope of the Hold Harmless Provision and Heilman's contribution rights is irrelevant.

**11.** Heilman also contends the bankruptcy court's ruling that Debtor's bankruptcy discharge relieved the Debtor from paying the Beyer Loan improperly preempts state law. The Supremacy Clause and the doctrine of preemption invalidates state statutes to the extent they are inconsistent with or contrary to the purposes or objectives of federal law.

## VI. CONCLUSION

For the foregoing reasons, we affirm the bankruptcy court's dismissal of Heilman's adversary proceeding seeking to enforce the terms of the Dissolution Decree with respect to the Beyer Loan.

PAPPAS, Bankruptcy Judge, dissenting in part.

Regrettably, I believe the majority incorrectly applies 11 U.S.C. § 727(b) in this appeal, and that its decision inappropriately impairs the ability of state courts to equitably resolve debt issues in a marital dissolution proceeding. I therefore respectfully dissent from that portion of the decision which holds that the Debtor's obligation to hold Heilman harmless for any payments she is required to make to the Beyers was a prebankruptcy, discharged debt.[12]

In a Washington dissolution proceeding, the state court is commanded by statute to assign responsibility for the parties' liabilities in a manner "as shall appear just and equitable after considering all relevant factors...." RCW 26.09.080. In particular, the court is directed to consider the economic circumstances of each spouse at the time of the dissolution in designing an equitable resolution of the parties finances. *See* RCW 26.09.080(4).

These statutes would seem to require the state court to consider that one party to a dissolution action has received a discharge in bankruptcy when the court crafts its equitable dissolution of the parties' property and debts. Consistent with the agreement of the parties, I think we must presume that the Washington court in this case decided, in the exercise of its equitable discretion in dissolving the parties' marriage, that if Heilman were required to pay the community debt owed by the parties to the Beyers, the Debtor must hold her harmless.[13] I think we must also assume, to be true to the state law, that the dissolution court imposed the equitable, hold-harmless obligation upon the Debtor based upon the economic circumstances of the parties existing at the time of the dissolution in September 2006, some

*Perez v. Campbell*, 402 U.S. 637, 652, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971) ("[A]ny state legislation which frustrates the full effectiveness of federal law is rendered invalid by the Supremacy Clause."). The purpose of bankruptcy law is to provide a debtor with a fresh start. *Local Loan Co. v. Hunt*, 292 U.S. 234, 244, 54 S.Ct. 695, 78 L.Ed. 1230 (1934); *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 367, 127 S.Ct. 1105, 166 L.Ed.2d 956 (2007). There is no conflict between federal bankruptcy law and the state law that empowers Washington state courts to divide assets and liabilities in a dissolution proceeding. RCW 26.09.080. In this case, the issue is not whether " § 524 preempts state law with respect to a family court's ability to equitably divide assets and liabilities in a dissolution proceeding." The issue is the effect the discharge had on the responsibilities of the community members to pay a pre-petition debt.

12. I join in the Panel's decision that, despite the Debtor's post-bankruptcy agreement with

Heilman, and the terms of the state court dissolution decree, any personal obligation of the Debtor to pay the debt owed to the Beyers was discharged and unenforceable.

13. The parties and the majority take no issue with characterizing the loan from the Beyers to Heilman to care for the needs of her child as a community debt. This conclusion appears to be consistent with the Washington statutes. *See* RCW 26.16.205 (providing that both spouses can be sued "jointly or severally" to recover any expenses incurred for the family, "including stepchildren"). In Washington, when a divorced person pays a community obligation, she is entitled to contribution from her former spouse. *Hanson v. Hanson*, 55 Wash.2d 884, 350 P.2d 859 (1960). Here, however, there was no evidence that Heilman had paid any amounts to the Beyers on the loan. Clearly, the Debtor's liability to Heilman was not based upon her right to contribution.

nine months after the Debtor received his bankruptcy discharge.

Despite the statutory requirement that an equitable dissolution be crafted based upon the facts as they exist at the time of the dissolution, the majority characterizes the Debtor's newly-imposed obligation under the state court's order as a prebankruptcy claim. Then, though holding that the hold-harmless obligation is a pre-petition claim, the majority inexplicably concludes that it is not excepted from discharge in the Debtor's bankruptcy case under § 523(a)(15) since it was not incurred in the course of a divorce, apparently because the dissolution decree was not entered by the state court until after the Debtor's bankruptcy case was filed.[14] These conclusions simply can not be correct.

In general, except for debts described in § 523(a), a chapter 7 discharge impacts "all debts that arose before the date of the order for relief...." 11 U.S.C. § 727(b). Simply put, under Washington law, the state court could not impose a hold-harm-less obligation upon the Debtor until it entered the dissolution decree. As a result, the Debtor's duty to indemnify Heilman for payments made to the Beyers was clearly a post-bankruptcy debt not covered by the discharge in the bankruptcy case filed in October 2005.

The majority's attempt to treat the Debtor's obligation as a pre-existing "contingent" claim for contribution held by Heilman is out of step with state law. Heilman held no contribution claim against her spouse for payment of a community obligation—that claim could only arise as a result of the dissolution, and then only based upon a state judge's assessment of the equities of the parties' current economic circumstances.[15]

There are an abundance of decisions from bankruptcy courts across the Nation holding that debts established in post-petition divorce decrees in favor of a nondebtor spouse are not discharged in the debtor's prior bankruptcy case.[16] As one court recently summarized these holdings:

14. Like the majority, I do not think the hold-harmless agreement entered into by the parties in the dissolution proceeding constitutes an enforceable reaffirmation agreement for purposes of § 524(c). But that conclusion merely begs the question since, if the Debtor's duty to hold Heilman harmless from payments to the Beyers is a post-petition debt, no reaffirmation agreement was required to render the obligation enforceable, the Debtor's discharge notwithstanding.

15. While not expressly stating so, the majority apparently believes that Heilman's contingent claim for contribution from the Debtor arose when the parties, married at the time, incurred the debt to the Beyers, and that the claim merely matured when they divorced. But a hold-harmless obligation is only one form of device a state court might employ in equitably dissolving a marriage. For example, instead of ordering that the Debtor indemnify her for any payments she makes to the Beyers, the state court could have simply granted Heilman a money judgment against the Debtor for the amount due on the Beyers loan balance. Had it done so, would the majority have deemed that obligation a prebankruptcy discharged debt? Likely not. But if the majority is willing to deem the money judgment a "new" post-bankruptcy debt, there is an obvious flaw in its logic. The Debtor's obligation in both instances is a new one, imposed in the dissolution decree, not before.

16. The majority cites only one case, *Edwards v. Edwards (In re Edwards)*, 91 B.R. 95 (Bankr.C.D.Cal.1988), for the proposition that the dissolution decree in this case circumvents bankruptcy law by reviving a discharged debt. Of course, unlike the facts presented in this appeal, *Edwards* involved a divorce decree that required the debtor to directly pay creditors holding discharged debts, not a hold-harmless obligation imposed in favor of the nondebtor spouse. Moreover, the bankruptcy court also based its conclusion on decisions of the California courts con-

"Courts have consistently held that a debtor's obligation to a former spouse under a postpetition divorce decree or settlement constitutes a postpetition debt and is not dischargeable under § 727(b)." *In re Miller*, 246 B.R. 559, 562 (Bankr.E.D.Tenn.2000) (citing *Arleaux v. Arleaux*, 210 B.R. 148, 150 (8th Cir. BAP 1997); *Compagnone v. Compagnone (In re Compagnone)*, 239 B.R. 841, 844–45 (Bankr.D.Mass.1999); *Scholl v. Scholl (In re Scholl)*, 234 B.R. 636, 645 (Bankr.E.D.Pa.1999); *In re Degner*, 227 B.R. 822, 824 (Bankr.S.D.Ind.1997); *Bryer v. Hetrick (In re Bryer)*, 216 B.R. 755, 760–61 (Bankr.E.D.Pa.1998); *Neier v. Neier (In re Neier)*, 45 B.R. 740, 743 (Bankr.N.D.Ohio 1985)). Furthermore, where a divorce decree "obligates the debtor to indemnify the spouse and hold the spouse harmless from debts incurred during the marriage, courts recognize that the obligation to the spouse is separate from the original debt." *Id.* Consequently, a post-petition divorce obligation to hold a spouse harmless from prepetition debt will not be subject to discharge. *Id.*

*Cooper v. Cooper (In re Cooper)*, 2009 WL 3747210 *3 (Bankr.M.D.Ala.2009); *see also, Buglione v. Berlingeri (In re Berlingeri)*, 246 B.R. 196, 200–201 (Bankr. D.N.J.2000). The common theme expressed by all of these decisions is that an obligation imposed by a divorce-court in a post-bankruptcy decree is a *new* debt owed by the debtor to his soon-to-be former spouse, not an obligation to pay any prebankruptcy debt.[17] Without good reason, the majority departs from that simple theme today.

I also believe that the majority's conclusion runs afoul of the general case law concerning when a claim arises for purposes of discharge. As the majority acknowledges, in the Ninth Circuit, a claim is deemed to arise only when the claimant can fairly or reasonably contemplate the claim's existence. *See, e.g., SNTL Corp. v. Centre Ins. Co. (In re SNTL Corp.)*, 571 F.3d 826, 839 (9th Cir.2009). Here, the dissolution action was not even commenced until several months *after* the Debtor filed the bankruptcy case and received a discharge. Contrary to the majority's conclusion, there is nothing in our terse record to show that Heilman should have fairly or reasonably contemplated at the time of the Debtor's bankruptcy that a state court would, in an as-of-yet unfiled dissolution action, employ a hold-harmless obligation in her favor in dissolving her marital affairs with the Debtor. The majority does not identify what circumstances should have alerted Heilman that her marriage to the Debtor would one day end, and that she would, as a result of the dissolution decree, be granted a claim against her spouse? Absent such facts, we should hold that the Debtor's hold-harmless obligation to Heilman was not discharged in his bankruptcy.

In addition to misapplying § 727(b), I fear that the majority's holding will also

---

struing state statutes, not the Code. *Edwards*, 91 B.R. at 96, *citing In re Marriage of Cohen*, 105 Cal.App.3d 836, 164 Cal.Rptr. 672 (1980); *In re Marriage of Clements*, 134 Cal.App.3d 737, 184 Cal.Rptr. 756 (1982); and *In re Marriage of Williams*, 157 Cal.App.3d 1215, 203 Cal.Rptr. 909 (1984). In light of the many decisions to the contrary discussed below, the majority should find little comfort in *Edwards*.

**17.** The majority attempts to distinguish the outcome in these many cases because they did not originate in community property states, or because they are based in part upon local divorce laws. But as noted above, the question we decide in this appeal is not a community property issue—it involves when the spouse's claim arises, pre- or post-bankruptcy, an analysis that necessarily implicates the state law basis of the claim.

unnecessarily interfere with the ability of state courts to equitably dissolve marriages. By restricting the dissolution court's ability to impose a hold-harmless obligation in favor of Heilman against the Debtor, the majority effectively instructs the court that, in spite of controlling state law, it can not impose new financial obligations in favor of one spouse against a former bankruptcy debtor in its effort to equitably adjust their marital affairs.

The resolution of divorce issues is the exclusive province of the state courts, not the federal bankruptcy courts.[18] We should be extremely reluctant to create barriers to the otherwise just, fair resolutions of dissolution actions in state courts. Unfortunately, that is exactly what the majority's holding does.[19]

Finally, if it is indeed a prebankruptcy debt, I can not fathom how the hold-harmless obligation created in the state court dissolution decree does not represent a debt to a spouse "that is incurred by the debtor ... in connection with a ... divorce decree or other order of a court ..." for purposes of excepting that debt from discharge under § 523(a)(15). In enacting §§ 523(a)(5) and (15), Congress dictated that virtually all obligations and debts created in state court divorce proceedings be excepted from discharge in a former spouse's bankruptcy case. But while the majority declares the hold-harmless obligation to be a pre-petition debt, it concludes that because the dissolution decree was not entered by the state court until after the Debtor filed for bankruptcy, the hold-harmless obligation is not covered by the exception from discharge. Section 523(a)(15) contains no such condition, nor does the majority cite case law or other authority for restricting the application of the discharge exception in this fashion. Moreover, the inconsistency in the majority's logic is indefensible: either the debt owed by the Debtor to Heilman is a pre-bankruptcy claim to which the exception applies, or it is an undischarged post-bankruptcy debt.[20]

**18.** Indeed, in recently instructing federal courts to refrain from encroaching upon the state courts' prerogative to resolve domestic relations issues, the Supreme Court states:

> Long ago we observed that "[t]he whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States." *In re Burrus*, 136 U.S. 586, 593–594, 10 S.Ct. 850, 34 L.Ed. 500 (1890). *See also Mansell v. Mansell*, 490 U.S. 581, 587, 109 S.Ct. 2023, 104 L.Ed.2d 675 (1989) ("[D]omestic relations are preeminently matters of state law"); *Moore v. Sims*, 442 U.S. 415, 435, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979) ("Family relations are a traditional area of state concern"). So strong is our deference to state law in this area that we have recognized a "domestic relations exception" that "divests the federal courts of power to issue divorce, alimony, and child custody decrees." *Ankenbrandt v. Richards*, 504 U.S. 689, 703, 112 S.Ct. 2206, 119 L.Ed.2d 468 (1992). *We have also acknowledged that it might be appropriate for the federal courts to decline to hear a case involving "elements of the domestic relationship," id., at 705, 504 U.S. 689, 112 S.Ct. 2206, 119 L.Ed.2d 468, even when divorce, alimony, or child custody is not strictly at issue.*
> *Elk Grove Unified School Dist. v. Newdow*, 542 U.S. 1, 12–13, 124 S.Ct. 2301, 159 L.Ed.2d 98 (2004) (emphasis added).

**19.** The majority relies upon the Supremacy Clause as a basis for its holding in this case, arguing its interpretation is necessary to promote the Bankruptcy Code's policy giving the Debtor a financial "fresh start." Of course, I disagree with that conclusion if, in the process, we subordinate the equally-strong federal policy of avoiding interference with the adjudication of marital issues in state court. Moreover, the majority's enthusiasm for promoting the discharge in this case seems misplaced since the Debtor has died. If anyone benefits from a fresh start, it will be the Debtor's heirs.

**20.** In light of the majority's view of the interplay between § 727(b) and § 523(a)(15), at-

In sum, I would conclude that the hold-harmless obligation imposed upon the Debtor by the state court is a post-bankruptcy debt and was not discharged in the Debtor's bankruptcy case. Even assuming it was a prebankruptcy debt, I would hold that it was excepted from discharge. Instead, the majority renders a most unfair decision that, in my opinion, conflicts with the Code and cases interpreting it, impairs the ability of state courts to equitably resolve married parties' financial affairs upon divorce, and misapplies the exception to discharge for debts created in divorce decrees. I do not agree.

torneys counseling divorce clients should consider advising clients to seek a bankruptcy discharge prior to pursuing a marital dissolution, since a discharge may insulate the debt- or from liability for a variety of potential claims by the debtor's spouse that would clearly be nondischargeable if the decree is entered prior to discharge.