**FILED**

**FEB 22 2021**

**SUSAN M. SPRAUL, CLERK**
**U.S. BKCY. APP. PANEL**
**OF THE NINTH CIRCUIT**

**ORDERED PUBLISHED**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>LISA GAY MELLEM,<br>　　　　　　Debtor. | BAP No. CC-20-1174-KTG<br><br>Bk. No. 8:09-bk-18441-ES |
| LISA GAY MELLEM,<br>　　　　　Appellant,<br>v.<br>CARL J. MELLEM, Successor Trustee of<br>the Dorothy B. Mellem Revocable Trust,<br>　　　　　Appellee. | OPINION |

Appeal from the United States Bankruptcy Court
for the Central District of California
Catherine E. Bauer, Bankruptcy Judge, Presiding

Before: KLEIN,[1] TAYLOR, and GAN, Bankruptcy Judges.

KLEIN, Bankruptcy Judge:

We venture to the fringes of the bankruptcy discharge injunction in this probate dispute to explore the meaning of "personal liability of the debtor" in 11 U.S.C. § 524(a).

---

[1] Hon. Christopher M. Klein, U.S. Bankruptcy Judge for the Eastern District of California, sitting by designation.

Here, the debtor contends that the chapter 7[1] discharge of a $75,000 debt to her mother prevented the mother from thereafter reducing her legacy by $75,000. A probate court ruling that the deceased mother's intention was to treat $75,000 as an advance on an inheritance, prompted the daughter to return to the bankruptcy court, alleging contempt of discharge. The bankruptcy court ruled there was no "debt" being collected "as a personal liability of the debtor;" hence, no contempt.

We agree and AFFIRM because a bankruptcy discharge does not constrain an individual's ability to make a testamentary disposition. We publish to clarify the scope of the § 524 discharge injunction.

## FACTS

Appellant Lisa Mellem is a self-represented discharged chapter 7 debtor who has been a member of the California Bar since 2003.

Lisa's mother, Dorothy, who died in 2017, created a revocable family trust in 1980 (hereafter "Trust") into which she transferred all her assets as an estate planning device. The beneficiaries included her three children (Lisa, Carl, and Richard). Lisa's brother, Carl Mellem, is trustee of the now-irrevocable Trust.

In 2004, Lisa executed a promissory note in favor of her mother for $75,000 ("$75,000 Note") on account of inter vivos (or "lifetime") transfers.

---

[1] Unless specified otherwise: chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532; "Rule" references are to the Federal Rules of Bankruptcy Procedure; and "Civil Rule" references are to the Federal Rules of Civil Procedure.

2

In 2009, Lisa filed a chapter 7 bankruptcy case, receiving a discharge in a no-asset case in which no deadline to file claims was fixed. She scheduled about $248,000 in unsecured debt but did not schedule the $75,000 Note to her mother.[2]

Lisa excuses her omission by saying her mother had told her that she did not have to repay the $75,000 Note, which she took to mean that it was forgiven. Now she contends the debt existed but was discharged.

Dorothy amended the Trust in 2012 to provide for each of her children to receive a 30% final distribution from the Trust and 10% to another person.

The Trust permits Dorothy to designate lifetime transfers that she wanted applied to an individual beneficiary's share of her final estate. In two holographic memoranda dated in 2012 and in 2013, Dorothy listed lifetime transfers of $75,000 and $10,000 with respect Lisa and Richard.

Carl took over as successor trustee in 2014. Dorothy died in August 2017. Attorney Edward Goldkuhl represents Carl in Probate Court.

On April 5, 2018, Carl sent to Lisa and Richard a status report projecting their respective Trust distributions: Carl, $172,920; Richard, $162,920 (=$172,920-10,000); and Lisa, $97,920 (=$172,920-75,000).

---

[2] Lisa's bankruptcy schedules are not in the excerpts of record. We exercise our discretion to take judicial notice of schedules and other documents filed in Lisa's bankruptcy case. *See Atwood v. Chase Manhattan Mortg. Co. (In re Atwood)*, 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

He explained the differences in distributions as accounting for lifetime advances of $75,000 to Lisa and $10,000 to Richard.

Lisa objected to the $75,000 reduction from her share. She said Dorothy forgave the $75,000 Note. Later, she interposed her bankruptcy discharge, contending that the $75,000 Note was an unscheduled "debt" that was discharged as a matter of law.[3]

Lisa's objection led Carl, as trustee represented by Goldkuhl, to file in Probate Court[4] a petition denoted a Request for Instructions as permitted by California Probate Code § 17200. The petition sought a determination that $75,000 and $10,000 should be deducted from Lisa's and Richard's residual shares of the Trust based on Dorothy's intent. The petition was filed June 25, 2018, with hearing set for September 28, 2018.

Carl provided declaration testimony and documentary evidence that Dorothy made writings that she kept in the same place and in the same manner as she kept her trust documents, including holographic notations dated October 15, 2012, and June 26, 2013, specifying $75,000 and $10,000 for Lisa and Richard, respectively.[5] Carl asserted that these handwritings,

---

[3] In this appeal, we take Lisa at her word that the $75,000 Note was a discharged debt, rather than a nonexistent forgiven debt. It is not usual for a lawyer to admit to intentional omission of a debt in bankruptcy schedules signed under penalty of perjury.

[4] Formally, the Superior Court of California for the County of Santa Cruz, Probate Division.

[5] Carl's Probate Court declaration explained:

In the years that followed [settlement of her Trust], Mother made various loans and advances to all of her children. Some of those notes were paid back, and

4

among other evidence, reflected Dorothy's intent that the referenced lifetime transfers be treated as advances on the transferees' residual share of the Trust as provided for in Cal. Probate Code § 21135.[6]

Lisa did not file written opposition, despite having had nearly three months of notice of the hearing. Nor was she present at the appointed hearing time on September 28, 2018. The Probate Court granted Carl's petition, determining that Dorothy intended that $75,000 and $10,000 in lifetime transfers to Lisa and Richard be accounted as advances on their residual shares of the Trust.

Lisa thereafter tried to persuade the Probate Court that her bankruptcy discharge warranted reconsideration and revision of its order.[7] The Probate Court was not persuaded.

Resorting to bankruptcy court, Lisa obtained an order reopening her chapter 7 case and requested an order of contempt. The court thereupon

---

some were forgiven outright. Mom was convinced that some of her offspring simply needed more help than others, and she felt it was her prerogative, or obligation, to provide that help. However, she also wanted the division of her assets to be equal and fair to all of her children. This dichotomy created a great deal of stress and concern for Mother. On numerous occasions, Mom would call me and want to change her Will to reflect moneys that had gone to one or another of her offspring ... sometimes she was just mad at one of us. Rather than change her Will, she decided that she could give money to anyone that she wanted, and then included in her Trust any note to an individual beneficiary that she wanted applied to that beneficiary's share of her final estate.

[6] Carl also noted there was evidence of another $22,000 in transfers to Lisa not mentioned in Dorothy's trust materials, for which Carl did not propose adjustments.

[7] Although the excerpts of record do not detail the later state-court proceedings, it is apparent the Probate Court did not regard the bankruptcy discharge as warranting

ordered Carl and Goldkuhl to show cause why they should not be held in contempt for violation of the discharge injunction.

Upon considering the responses to the show cause order, the judge, without otherwise explaining herself, observed that bankruptcy courts are not appellate courts empowered to overturn Probate Court decisions, ruled that there was no "debt," and denied Lisa's contempt motion. Lisa's motion to reconsider under Civil Rules 59(e) and 60(b), incorporated by Rules 9023 and 9024, was also denied.

This appeal ensued.

## JURISDICTION

The bankruptcy court had subject-matter jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(O). Civil enforcement of the discharge injunction of 11 U.S.C. § 524(a)(2) is a core proceeding that a bankruptcy court may hear and determine. We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

1.     Does the bankruptcy discharge injunction of 11 U.S.C. § 524(a)(2) forbid a testator or settlor of a family trust from reducing a legacy to the discharged debtor?

2.     Did the bankruptcy court abuse its discretion by refusing to find contempt and refusing to reconsider its ruling?

---

relief from its order granting Carl's petition.

## STANDARDS OF REVIEW

The scope of the bankruptcy discharge injunction is a mixed question of law and fact to be reviewed either de novo or for clear error, depending upon whether questions of law or questions of fact predominate. *U.S. Bank Nat'l Ass'n ex rel CWCapital Asset Mgmt. LLC v. Vill. at Lakeridge, LLC*, ___ U.S. ___, 138 S.Ct. 960, 967-68 (2018). As questions of law predominate in this instance, review is de novo.

If the discharge injunction is violated, the bankruptcy court's decision regarding contempt sanctions is reviewed for abuse of discretion. *Knupfer v. Lindblade (In re Dyer)*, 322 F.3d 1178, 1191 (9th Cir. 2003); *Freeman v. Nationstar Mortg. LLC (In re Freeman)*, 608 B.R. 228, 233 (9th Cir. BAP 2019).

Denial of a motion for relief under Civil Rules 59 and 60 is reviewed for abuse of discretion. *Hansen v. Moore (In re Hansen)*, 368 B.R. 868, 875 (9th Cir. BAP 2007); *United Student Funds, Inc. v. Wylie (In re Wylie)*, 349 B.R. 204, 208 (9th Cir. BAP 2006).

A bankruptcy court abuses discretion if it applies the wrong legal standard or makes factual findings that are illogical, implausible, or without support in the record. *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 832 (9th Cir. 2011); *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc).

## DISCUSSION

As this appeal is from a bankruptcy court's ruling that contempt was not appropriate because the discharge injunction did not forbid the

7

challenged conduct, we begin with basic bankruptcy-related contempt principles before describing pertinent state law and drilling down on the scope of the bankruptcy discharge.

## I

Bankruptcy contempt principles subdivide into law and procedure.

## A

A bankruptcy court may hold a creditor in contempt for violation of the discharge injunction if "there is no objectively reasonable basis for concluding that the creditor's conduct might be lawful under the discharge order." *Taggart v. Lorenzen*, ___ U.S. ___, 139 S. Ct. 1795, 1801 (2019).

Subjective good or bad faith is not controlling. While subjective bad faith is not necessary to impose civil contempt sanctions, it sometimes may be sufficient to impose contempt sanctions. *Id.,* at 1802.

Conversely, a contemnor's subjective good faith will not prevent a civil contempt finding when no objectively reasonable basis is present, but good faith may be considered in determining the extent of sanctions to be imposed. *Freeman*, 608 B.R. at 234 (citing *Taggart*, 139 S. Ct. at 1802); *In re LeGrand*, 612 B.R. 604, 613 (Bankr. E.D. Cal. 2020) (same).

The *Taggart* refinements of the civil contempt standard in the bankruptcy discharge context did not otherwise alter a movant's threshold burden of going forward. The moving party still must show at the outset that the alleged contemnor: (1) knew the discharge injunction applied; and (2) intended the actions that violated the injunction. *Ocwen Loan Servicing,*

*LLC v. Marino (In re Marino)*, 577 B.R. 772, 782-83 (9th Cir. BAP 2017), *aff'd in part & appeal dismissed in part*, 949 F.3d 483 (9th Cir. 2020) (citing *Zilog, Inc. v. Corning (In re Zilog, Inc.)*, 450 F.3d 996, 1007 (9th Cir. 2006)).

If the movant establishes the threshold elements, the burden of going forward then shifts to the responding party to show that it was impossible comply with the discharge order. *Id.* at 783.

The ultimate burden of persuasion remains on the movant to show, per *Taggart*, no objectively reasonable basis for concluding that the alleged contemnor's conduct might be lawful under the discharge order.

B

Rule 9020 prescribes that a motion for an order of contempt made by a party in interest or the United States trustee qualifies as a contested matter under Rule 9014. Fed. R. Bnkr. P. 9014 & 9020.

In contrast, an adversary proceeding under Rule 7001 is the proper procedure to obtain a declaratory judgment that a nonbankruptcy court's order is void. Fed. R. Bankr. P. 7001; *see Sterling-Pac. Lending, Inc. v. Moser (In re Moser)*, 613 B.R. 721, 727 (9th Cir. BAP 2020); *Ruvacalba v. Munoz (In re Munoz)*, 287 B.R. 546, 551 (9th Cir. BAP 2002).

C

Civil Rule 52(a) requiring findings of fact and conclusions of law applies in contested matters, including a motion for an order of contempt. Fed. R. Civ. P. 52(a), *as incorporated by* Fed. R. Bankr. P. 7052 *and* 9014(c).

There is merit to Lisa's complaint that the bankruptcy judge did not "find the facts specially" and did not render conclusions of law separately as required by Civil Rule 52(a)(1), incorporated by Rules 7052 and 9014(c).

The court's conclusory assertion that there was no debt involved came without explanation.

The primary cost of deficient findings plays out on appeal. Without findings of fact, a reviewing court is not constrained by Civil Rule 52(a)(6)'s clear error standard and need not give "due regard to the trial court's opportunity to judge the witnesses' credibility." Fed. Civ. P. 52(a)(6), *as incorporated by* Fed. R. Bankr. P. 7052 *and* 9014(c).

While the bankruptcy court's ruling that no "debt" was involved in the Probate Court petition seeking instructions lacked detailed findings of fact and conclusions of law, the record is sufficient for this Panel fairly to decide this appeal. The essential facts are not in dispute. The crucial analysis entails questions of law that we are equipped to determine de novo.

II

The California Probate Code governs probate and family trust matters.

Family trusts are covered by Probate Code Division 9, "Trust Law." Cal. Prob. Code §§ 15000-19530.

Discerning differences among gifts, loans, and transfers requires reference to Probate Code Division 11, "Construction of Wills, Trusts, and

10

Other Instruments," Part 1, "Rules for Interpretation of Instruments." CAL. PROB. CODE §§ 21101-21140.

A

California probate law recognizes that lifetime transfers (i.e., inter vivos transfers) to trust beneficiaries may ultimately be treated as loans, gifts, or advancements on an inheritance.

A testator or settlor of a revocable family trust may change a debt or loan into an advancement, convert an advancement into a pure gift, or change a pure gift to an advancement. 64 Cal. Jur. 3d Wills § 591.

The terms "Advancement [or Advance] on an Inheritance" and "Ademption by Satisfaction" have come to be used interchangeably by California courts. *Id.*

The seminal California Supreme Court decision on the subject is *In re Hayne's Estate*, 165 Cal. 568, 573 (1913). That decision retains vitality. *Sachs v. Sachs*, 44 Cal. App. 5th 59, 61 (2020), *review denied* (Apr. 1, 2020) (lifetime gifts as advances on inheritances). The current codification of *Hayne's Estate* rule (which also applies to family trusts per Probate Code § 21101) is Probate Code § 21135 ("Lifetime gifts; satisfaction of at-death transfer; conditions").[8]

---

[8] The key provisions are in Probate Code § 21135(a):

(a) Property given by a transferor during his or her lifetime to a person is treated as a satisfaction of an at-death transfer to that person in whole or in part only if one of the following conditions is satisfied:

11

In his petition requesting instructions, Carl relied on Probate Code § 21135(a)(2). He pointed to Dorothy's 2012 and 2013 holographic writings as contemporaneous writings by Dorothy to demonstrate that the $75,000 in lifetime transfers to Lisa were "to be deducted from the value of the at-death transfer." Cal. Prob. Code § 21135(a)(2).

B

Judicial procedure for family trust matters is governed by Probate Code Division 9, Part 5, "Judicial Proceedings Concerning Trusts." Cal. Prob. Code §§ 17000-17457.

The superior court having jurisdiction over the trust has exclusive jurisdiction of proceedings concerning the internal affairs of a trust. Cal. Prob. Code § 17000(a). As noted, the Probate Court in this instance is the Superior Court of California for Santa Cruz County Probate Division.

---

(1) The instrument provides for deduction of the lifetime gift from the at-death transfer.

(2) The transferor declares in a contemporaneous writing that the gift is in satisfaction of the at-death transfer or that its value is to be deducted from the value of the at-death transfer.

(3) The transferee acknowledges in writing that the gift is in satisfaction of an at-death transfer or that its value is to be deducted from the value of the at-death transfer.

(4) The property given is the same property that is the subject of a specific gift to that person.

Cal. Prob. Code § 21135(a).

12

A trustee or beneficiary of an irrevocable trust may petition the Probate Court concerning the internal affairs of the trust. Cal. Prob. Code § 17200(a).

The "internal affairs" of the trust are defined in a nonexclusive list of 23 categories set forth as § 17200(b).

Instructing the trustee is a specified internal affair for which there may be a petition. Cal. Prob. Code § 17200(b)(6).

Carl availed himself of this authority when he petitioned the Probate Court for "Instructions" regarding whether $75,000 and $10,000 should be treated as advances on inheritances based on Dorothy's expressions of intent. He presented evidence that Dorothy declared in contemporaneous writings that the respective values were to be deducted from the value of the at death transfers. Cal. Prob. Code § 21135(a)(2).

The applicable substantive law is that the transferor's intent controls. Cal. Prob. Code § 21102.

The Probate Court was persuaded of Carl's position and did not regard Lisa's bankruptcy discharge as an impediment to its ruling.

### III

The oddity that this is a probate situation prompts us to revisit our jurisdiction regarding the Probate Court activity in light of the so-called "probate exception" to federal jurisdiction.

13

## A

Our navigational star regarding the probate exception is the Supreme Court decision in *Marshall v. Marshall*, 547 U.S. 293, 311-12 (2006).

*Marshall* clarified that the judge-made probate exception is to be understood as a statement of the general principle that when one court is exercising in rem jurisdiction over a res, a second court will not assume in rem jurisdiction over the same res. *Id.* Probate of a will, annulment of a will, and administration of a decedent's estate are matters reserved to state probate courts. *Id.*

Here, the Probate Court was exercising in rem jurisdiction over the res of the Trust to rule regarding the internal affairs of the Trust within the scope of Probate Code § 17200.

## B

It is, of course, plausible that Probate Court decrees could be void by virtue of § 524(a)(1), especially if collection of a debt is implicated. Likewise, it is plausible that participants in Probate Court activity could offend the § 524(a)(2) discharge injunction.

To be sure, the power to enforce the discharge injunction does entitle bankruptcy courts to determine whether judgments rendered by nonbankruptcy courts operate to determine the personal liability of a debtor with respect to a discharged debt or entail the collection, recovery, or offset of a discharged debt as a personal liability of the debtor. This

14

enforcement power extends to subterfuges and circumventions. *Heilman v. Heilman (In re Heilman)*, 430 B.R. 213, 220 (9th Cir. BAP 2010) (2-1 decision).

In Heilman, in the context of the analogous domestic relations exception to federal jurisdiction, we discerned invalid subterfuge and circumvention in financial provisions of a marital dissolution decree to the extent it operated to revive a discharged debt. *Id.*

In describing the interplay between state and federal courts with respect to the § 524(a)(1) discharge injunction, the Ninth Circuit has explained that if a state court construes the discharge correctly, then its judgment will be enforced and not be vulnerable to being upset by means outside the normal appellate channels. Conversely, if the state court construes the discharge incorrectly, then its judgment may be void to the extent it offends the discharge and is subject to collateral attack in federal court. *McGhan v. Rutz (In re McGhan)*, 288 F.3d 1172, 1179-80 (9th Cir. 2002) (citing with approval *Pavelich v. McCormick, Barstow, Sheppard, Wayte & Carruth LLP (In re Pavelich)*, 229 B.R. 777, 783 (9th Cir. BAP 1999)); *cf. Gruntz v. Cnty. of L.A. (In re Gruntz)*, 202 F.3d 1074, 1082-84 (9th Cir. 2000) (en banc) (applying similar principles to the automatic stay).

C

The bankruptcy court also noted that it was not a court of appeals with power to review or overturn Probate Court decisions. This correct observation pertains to Lisa's attack on the merits of the Probate Court decision, appellate review of which is the province of California state

15

courts. *E.g., Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283-84 (2005); *Lopez v. Emerg. Serv. Restoration, Inc. (In re Lopez)*, 367 B.R. 99, 103-04 (9th Cir. BAP 2007).

It follows that the probate exception does not necessarily constrain bankruptcy court jurisdiction to police subterfuges and enforce the bankruptcy discharge so long as there is no exercise of in rem jurisdiction over the res of the family trust or invasion of the legitimate province of state appellate courts.

IV

The crucial question in this appeal is the scope of the protection afforded by the bankruptcy discharge.

A

The discharge umbrella protects only the "personal liability with respect to any **debt** discharged" under the Bankruptcy Code.

The first facet of the effect of a bankruptcy discharge is § 524(a)(1), which relates to court judgments. The discharge "voids" all judgments "at any time obtained," -- i.e., past, present, and future – "to the extent that" the judgment is a "determination of the personal liability of the debtor" with respect to a discharged "**debt**." 11 U.S.C. § 524(a)(1).

The second facet is § 524(a)(2), which relates to the World. The discharge "operates as an injunction" against commencement or continuation of an action, employment of process, or an act to collect,

16

recover, or offset any discharged *debt* "as a personal liability of the debtor."
11 U.S.C. § 524(a)(2).

In each case, the extent the discharge is limited to "**personal liability of the debtor**."

B

Back to basics. In assessing whether there is a discharged "debt" that is being collected, recovered, or offset "as a personal liability of the debtor" within the meaning of the § 524(a)(2) injunction one must refer to the statutory definition of "debt."

1

The term "debt" is defined for Bankruptcy Code purposes: "The term 'debt' means liability on a claim." 11 U.S.C. § 101(12).

2

In turn, the term "claim" is likewise defined:

The "term" claim means --

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

11 U.S.C. § 101(5).

17

The Supreme Court has explained that a "claim" is a right to payment and a "debt" is a "duty to pay." *Ohio v. Kovacs*, 469 U.S. 274, 280-84 (1985).

Anything that does not qualify as a "claim" for purposes of § 101(5) probably is not a "debt" for purposes of the § 524(a)(2) injunction.

V

The question becomes whether Dorothy was collecting, recovering, or offsetting a discharged "debt."

Although there may be little economic difference between a $75,000 discharged debt and a $75,000 advancement on an inheritance, legal differences matter. The key legal requirement is that the intent of the settlor of the trust takes precedence. Cal. Prob. Code § 21102(a).

The legal difference here is that Dorothy, as the settlor of the Trust or as testator of a will, was entitled as a matter of law to direct the disposition of her assets at death in any manner she chose. *Id.*

The fact that she intended and directed the adjustment of otherwise equal distributions by treating $75,000 and $10,000 lifetime gifts to two of her three children as advancements on an inheritance does not amount to collecting a debt "as a personal liability" of the debtor within the meaning of § 524(a)(2). Lisa's argument to the contrary incorrectly conflates advancements with loans – two legally distinct concepts.

Nothing suggests that Dorothy was directing the trustee to enforce a "right to payment" within the meaning of § 101(5)(A).

Nor does anything suggest that Dorothy was directing the trustee to assert a "right to an equitable remedy for breach of performance" giving rise to a right to payment within the meaning of § 101(5)(B).

Instead, in the exercise of her personal autonomy over her assets as recognized by Probate Code § 21102(a), Dorothy, at most, was implementing what she must have regarded as her own moral obligation to assure just distributions to her children. The "as-a-personal-liability" limit on the reach of the § 524(a)(2) discharge injunction accommodates Dorothy's right to direct how distributions from her Trust are to be made.

Accepting Lisa's position would amount to ruling that the discharge of a debt in bankruptcy forever bars a testator or settlor of a trust from adjusting a legacy or distribution. Adherence to such a position would stretch the concept of "personal liability of the debtor" beyond reasonable bounds and stray into the realm of testamentary dispositions. Just as there was nothing to prevent Dorothy from entirely disinheriting Lisa, there was nothing to prevent Dorothy from requiring that $75,000 in lifetime transfers be considered advances on an inheritance.

In short, after parsing the definition of "debt" through the matrix of § 101(5) and § 101(12) and the concept of "personal liability," we are convinced that the bankruptcy judge correctly ruled that no "debt" was implicated in the Probate Court instructions.

# VI

Back to burdens.

## A

As we explained above, *Taggart* teaches that Lisa had the burden of persuasion to demonstrate there is no objectively reasonable basis for concluding that the offending conduct might be lawful under the discharge order. *Taggart,* 139 S. Ct. at 1801.

Ordinarily, the court's determination whether there was an objectively reasonable basis for concluding the offending conduct might be lawful under the discharge, would be reviewed for abuse of discretion. *Dyer*, 322 F.3d at 1191; *Freeman*, 608 B.R. at 233.

The absence of findings by the bankruptcy judge in this instance means that we need not afford any form of deference to the bankruptcy judge's implicit view that there was an objectively reasonable basis for concluding the targeted conduct was lawful because no "debt" was involved. Affording no deference, we nevertheless agree.

Applicable nonbankruptcy law authorizing a settlor of a family trust to dictate that specified lifetime transfers be deemed advancements on inheritances, the handwritten notes of the settlor, and the trustee's adherence to proper procedures for requesting instructions coalesce to provide an objectively reasonable basis for concluding that the conduct of the alleged contemnors was lawful under the discharge order.

On this record, we do not have occasion to assess whether the bankruptcy judge abused discretion regarding its determination of contempt, because, as a matter of law, the discharge injunction was not violated.

B

We turn to review of the motions for reconsideration under Civil Rules 59(e) and 60(b) that also are the subject of this appeal.

To support a motion seeking relief under Civil Rule 59(e), a movant must show: "(1) a manifest error of fact; (2) a manifest error of law; or (3) newly discovered evidence." *Hansen*, 368 B.R. at 878.

A motion for relief under Civil Rule 60(b)(2) and (3) requires demonstration of: "(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); [or] (3) fraud . . . misrepresentation, or other misconduct of an adverse party. . . ." *Wylie*, 349 B.R. at 210.

In her opening appeal brief, aside from some generic references to fraud, Lisa did not specifically and distinctly argue that the bankruptcy court committed reversible error when it denied her motion for relief under Civil Rules 59 and 60. Her failure to do so permits forfeiture of all issues related to her appeal from the denial of her motion. *Dietz v. Ford (In re Dietz)*, 760 F.3d 1038 (9th Cir. 2014)(aff'g & adopting 469 B.R. 11, 25 (9th Cir. BAP 2012)); *Leigh v. Salazar*, 677 F.3d 892, 897 (9th Cir. 2012).

Lisa tries to leverage what she brands as Carl's inconsistent positions regarding whether the $75,000 Note was forgiven or remained an obligation. The irony is that she blames Carl for repeating her inconsistent positions. By omitting to schedule the $75,000 Note in her chapter 7 case, Lisa represented that debt did not exist, and a discharge was granted on the assumption she was truthful; now she says the debt did exist and was discharged. Principles of judicial estoppel – the estoppel of inconsistent positions – teach that she should not have it both ways. *Cheng v. K & S Diversified Invs., Inc. (In re Cheng)*, 308 B.R. 448, 453-54 (9th Cir. BAP 2004), *aff'd*, 160 F. Appx. 644 (9th Cir. 2005) (standards for judicial estoppel).

The inconsistent positions, however, are not material. *O'Donnell v. Tristar Esperanza Props., LLC (In re Tristar Esperanza Props., LLC)*, 488 B.R. 394, 405 (9th Cir BAP 2013), *aff'd*, 782 F.3d 492 (9th Cir. 2015). Regardless of whether the debt was discharged or forgiven by Dorothy in 2009, it is plausible that Dorothy intended as of 2009 that $75,000 would eventually be treated as an advancement on an inheritance. Even if that was not on Dorothy's mind in 2009, nothing prevented her in 2012 and 2013 from treating $75,000 as an advancement on an inheritance.

As Lisa did not carry her burden to show manifest error, newly-discovered evidence, fraud, or misrepresentation, the bankruptcy court did not abuse discretion in denying relief under Civil Rules 59(e) and 60(b).

**CONCLUSION**

The § 524(a)(2) bankruptcy discharge injunction against any act to collect, recover, or offset any discharged debt "as a personal liability of the debtor" does not prevent a testator or settlor of a family trust from requiring that an amount equal to the discharged debt, or any other sum, be treated as an advancement on an inheritance. Such treatment is not with respect to a "debt" as defined at Bankruptcy Code § 101(12) or an act to collect, recover, or offset a discharged debt "as a personal liability of the debtor" under § 524(a).

AFFIRMED.