In re Roberta KIMMEL, Debtor.

William B. Rooz, Appellant,

v.

Roberta Kimmel, Appellee.

BAP No. NC–07–1152–DMkK.
Bankruptcy No. 93–33089.
Adversary No. 06–03169.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted on Sept. 19, 2007 at San Francisco, California.

Filed–Nov. 8, 2007.

Maxwell Keith, Law Offices of Maxwell Keith, San Francisco, CA, for William B. Rooz.

John G. Warner, Corte Madera, CA, for Roberta Kimmel.

Before: DUNN, MARKELL and KLEIN, Bankruptcy Judges.

## OPINION

DUNN, Bankruptcy Judge.

This appeal turns on the meaning of the community property discharge under 11 U.S.C. § 524(a)(3).[1] The bankruptcy court ruled that the community property discharge entered in the case of one spouse forever discharged the entire community from then-existing community claims and that after-acquired community property could not later be liable for such a claim, notwithstanding a subsequent judgment against the non-filing spouse in his separate individual capacity. Because this conclusion was correct and rendered irrelevant all of the appellant creditor's theories for attacking what was later done with community property after a post-bank-

---

1. Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330, as in effect before October 17, 2005, the effective date of most of the provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.L. 109–8, 119 Stat. 23.

ruptcy judgment was obtained against the non-filing spouse, we AFFIRM.

## I. FACTS

The dispute dates from 1991, when William B. Rooz ("Rooz") sued David Kimmel and his wife Roberta Kimmel in the San Mateo County (California) Superior Court ("1991 Litigation"). In 1993, Roberta Kimmel filed a voluntary chapter 7 case, in which a discharge was entered in 1994. Thereafter, the 1991 Litigation proceeded against David Kimmel individually and resulted in a judgment against him personally in May 1995 ("1995 Judgment").

In July 1995, the Kimmels entered into a written postnuptial agreement ("Postnuptial Agreement") under California law, with the intention and effect of transmuting Roberta Kimmel's future wages from community property to her separate property.

Some ten years later, in October 2005, David Kimmel filed his own voluntary chapter 7 case when Rooz began collection activity by obtaining a writ of execution from the San Mateo County Superior Court on the 1995 Judgment. Rooz asserts he first learned of the Postnuptial Agreement when he attended David Kimmel's § 341(a) meeting of creditors.

Rooz filed an adversary proceeding in David Kimmel's bankruptcy case ("David Kimmel Bankruptcy Litigation"), seeking a determination that the 1995 Judgment was nondischargeable. After learning of the Postnuptial Agreement, Rooz amended his complaint to add Roberta Kimmel as a defendant. The bankruptcy court held that the 1995 Judgment debt was dischargeable as to David Kimmel, and dismissed Rooz's claim against Roberta Kimmel for lack of jurisdiction. We affirmed in a memorandum disposition, *Rooz v. Kimmel (In re Kimmel)*, No. NC–06–1252–PaDB (9th Cir. BAP December 29, 2006), which Rooz further appealed to the Ninth Circuit as its No. 07–15155, and which has not yet been decided by that court.

After Roberta Kimmel was dismissed from the David Kimmel Bankruptcy Litigation, and while Rooz's prior appeal was pending before us, Rooz commenced new litigation against Roberta Kimmel in the San Mateo County Superior Court (the "2006 Litigation") to recover a portion of the Kimmels' community property. He sought to recover only that portion of such property consisting of David Kimmel's community property interest in Roberta Kimmel's wages. As that interest, however, had been transferred to Roberta Kimmel under the Postnuptial Agreement, Rooz attacked the Postnuptial Agreement as a fraudulent transfer under California's Uniform Fraudulent Transfer Act. Cal. Civ.Code § 3439, et seq. In response, Roberta Kimmel reopened her 1993 bankruptcy case, removed the 2006 Litigation to the bankruptcy court, and moved for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c) ("Rule 12(c) Motion"), which is made applicable in bankruptcy adversary proceedings by Fed. R. Bankr.P. 7012(b).

In granting Roberta Kimmel's Rule 12(c) Motion, the bankruptcy court determined that any attempt to collect the 1995 Judgment from Roberta Kimmel's wages, even if they remained community property despite the Postnuptial Agreement, was barred by the discharge injunction provided in § 524(a)(3), which arose at the time Roberta Kimmel's discharge was entered in 1994. Hence, the characterization of the 1995 transmutation of wages as a fraudulent transfer was irrelevant. Alternatively, the bankruptcy court held that Rooz's fraudulent transfer action was barred by Cal. Civ.Code § 3439.09(c), which provides that such an action is extin-

guished after seven years. *Rooz v. Kimmel (In re Kimmel )*, 367 B.R. 166, 170–74 (Bankr.N.D.Cal.2007).

This timely appeal ensued.

## II. JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(1) and (b)(2)(H) and (O). We have jurisdiction pursuant to 28 U.S.C. § 158.

## III. ISSUE

Whether the 1994 discharge of Roberta Kimmel protected future-acquired community property from enforcement of a discharged community claim.

## IV. STANDARDS OF REVIEW

We review de novo the dismissal of a complaint on a motion for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c). *Ventress v. Japan Airlines*, 486 F.3d 1111, 1114 (9th Cir.2007).

## V. DISCUSSION

This appeal reflects an attempt to vitiate the discharge entered in the 1993 Roberta Kimmel bankruptcy case. Rooz's cause of action in the 1991 Litigation involved a claim that was allowable as a community claim in the 1993 bankruptcy. The black-letter law embodied in § 524(a)(3) provides that Roberta Kimmel's discharge protects all after-acquired community property from claims of creditors of either spouse. Hence, to the extent the 1995 judgment against David Kimmel had validity, it only could be enforced against him personally.

We focus on the effect of the § 524(a)(3) community property discharge on California's rule that community property is liable for debts of an individual spouse. CAL. FAM.CODE § 910.

**2.** Pursuant to § 101(5), a "claim" is a

### A. Roberta Kimmel's Bankruptcy Discharge

Although Rooz concedes that the discharge injunction imposed by § 524(a)(2) protects Roberta Kimmel from liability for causes of action asserted in the 1991 Litigation, he contends that the putative community property interest (after he avoids the 1995 transmutation as a fraudulent transfer) in her post–1995 wages is vulnerable to enforcement of the 1995 Judgment against David Kimmel. As the bankruptcy court correctly ruled, Rooz's theory misconstrues and offends the community property discharge injunction imposed by § 524(a)(3).

Understanding the community property discharge embodied in § 524(a)(3) begins with the definitions of "creditor" and "community claim" and the provision regarding community property as property of the estate.

#### 1. *Rooz was a "creditor" on a "community claim" in 1993*

██ Rooz unambiguously was a "creditor" holding a "community claim" in the 1993 Bankruptcy.

The term "creditor," as defined by § 101(10), means:

(A) entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor;

...; or

(C) entity that has a community claim.

The term "community claim" is defined in § 101(7) as a:

... claim[2] that arose before the commencement of the case concerning the

(A) right to payment, whether or not such right is reduced to judgment, liquidated,

debtor for which property of the kind specified in section 541(a)(2) of this title is liable, *whether or not there is any such property at the time of the commencement of the case.*

(Emphasis added.)

At the time Roberta Kimmel filed her bankruptcy case in 1993, Rooz was a "creditor" by virtue of § 101(10)(A) and § 101(10)(C). He had asserted a claim against Roberta Kimmel by virtue of the 1991 Litigation in which he was suing both Kimmels. Moreover, it was a "community claim" under § 101(7) because it was enforceable against the property of the Kimmel community.

Because community claims may be asserted, and are subject to discharge, in the bankruptcy of one spouse, the Bankruptcy Code provides that community property is brought into the estate of that spouse. The definition of property of the estate includes, by virtue of § 541(a)(2):

All interests of the debtor and the debtor's spouse in community property as of the commencement of the case that is—
(A) under the sole, equal, or joint management and control of the debtor; or
(B) liable for an allowable claim against the debtor, or for both an allowable

claim against the debtor and an allowable claim against the debtor's spouse, to the extent that such interest is so liable.

■ Construing §§ 101(7) and 541(a)(2) together, a community claim, for bankruptcy purposes, is a prepetition claim for which the Kimmels' community property was liable, whether or not such claim had proceeded to a judgment or otherwise was liquidated on the petition date.

In California, this is particularly significant because California community property is exposed to claims against an individual spouse. CAL. FAM.CODE § 910(a).[3]

■ A consequence of the alignment of §§ 101(7) and 541(a)(2) is that the nonexempt community property existing at the time of the filing of the petition is liable for payment of community claims.

2. *Community claims can be discharged to the benefit of the non-filing spouse*

■ Under § 524(a)(3), Roberta Kimmel's discharge permanently enjoined enforcement of the 1995 Judgment against all future-acquired community property, including both her own and David Kimmel's interests in her wages.[4] Regardless

---

unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or
(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured.

3. California Family Code § 910(a) provides:
(a) Except as otherwise expressly provided by statute, the community estate is liable for a debt incurred by either spouse before or during marriage, regardless of which spouse has the management and control of the property and regardless of whether one

or both spouses are parties to the debt or to a judgment for the debt.
Family Code § 902 defines the term "debt" in § 910(a) as:
"Debt" means an obligation incurred by a married person before or during marriage, whether based on contract, tort, or otherwise.

4. Section 524(a)(3) provides:
A discharge in a case under this title—...
(3) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect or recover from, or offset against, property of the debtor of the kind specified in section 541(a)(2) of this title that is acquired after the commencement of the case,

of whether the community claim was attributable to the actions of the debtor spouse, the nondebtor spouse, or both, the effect of § 524(a)(3) is that all community property acquired post-bankruptcy is protected by the discharge.

We previously have noted in dictum that § 524(a)(3) can operate to provide nondebtor spouses with a de facto partial discharge of their separate debts by enjoining a creditor from attaching community property in which the nondebtor spouse has an interest:

[A] nondebtor spouse in a community property state typically benefits from the discharge of the debtor spouse. According to Section 524(a)(3), after-acquired community property is protected by injunctions against collection efforts by those creditors who held allowable community claims at the time of filing. This is so even if the creditor claim is against only the nonbankruptcy spouse; the after-acquired community property is immune.

*Burman v. Homan (In re Homan)*, 112 B.R. 356, 360 (9th Cir. BAP 1989) (citation omitted). In other words, the personal liability of a nondebtor spouse that survives the bankruptcy only can be enforced against property of the nondebtor spouse that is not community property.

Although the nondebtor spouse is not actually discharged of liability, the consequence of § 524(a)(3) is that the property that is vulnerable to judgment enforcement against a nondebtor spouse is diminished by the protection of after-acquired community property. Hence, a judgment creditor of the nondebtor spouse on a community claim loses the ability to collect from anything other than the judgment debtor's separate property.

There is also a temporal aspect to the § 524(a)(3) discharge injunction in the sense that it applies only so long as there is community property. Dissolution of the marriage or death of a spouse terminates the community, at which point after-acquired community property loses its § 524(a)(3) protection. 4 COLLIER ON BANKRUPTCY ¶ 524.02[3][c] (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev.2007).

None of this, however, means that nondischargeability concepts do not apply to community claims. If a debt on a community claim would be excepted from discharge in a bankruptcy of the nondebtor spouse, then § 523(a)(3) provides that a nondischargeability action directed at the nondebtor spouse can be initiated in order to establish an exception to the allowable community claims that are discharged. The operative statutory language provides that the protection of after-acquired community property from liability for a pre-petition community claim does not apply when the claim "is excepted from discharge ... [or] would be so excepted, determined in accordance with the provisions of sections 523(c) and 523(d) of this title, in a [hypothetical] case concerning the debtor's spouse commenced on the date of the filing of the petition...." 11 U.S.C. § 524(a)(3).

Similarly, an objection to discharge may be focused on the nondebtor spouse. Under § 524(b)(2), if the court would not grant the nondebtor spouse a

___

on account of any allowable community claim, except a community claim that is excepted from discharge under section 523, 1228(a)(1), or 1328(a)(1) of this title, or that would be so excepted, determined in accordance with the provisions of sections 523(c)

and 523(d) of this title, in a case concerning the debtor's spouse commenced on the date of the filing of the petition in the case concerning the debtor, whether or not discharge of the debt based on such community claim is waived.

discharge in a hypothetical case filed on the date of the filing of the debtor spouse's petition, or if the nondebtor spouse has been denied a discharge within the preceding six years, then the community property discharge does not apply. 11 U.S.C. § 524(b)(2).[5]

The net result is that §§ 524(a)(3) and 524(b)(2) combine to prevent a wrongdoer from hiding behind an innocent spouse's discharge, but correlatively require the innocent spouse in a community property state to bear some burden of responsibility for the wrongdoing spouse. 4 Collier on Bankruptcy ¶ 524.02[3].

■ These provisions for nondischargeability and objection-to-discharge actions directed at the nondebtor spouse are, however, subject to a diligent creditor requirement. The failure by creditors to raise nondischargeability and discharge objection issues in a timely manner in the case of the debtor spouse will allow the community property discharge to be effected.

If creditors are not diligent, as one commentator has explained, "the Devil himself could effectively receive a discharge in bankruptcy if he were married to Snow White." Alan Pedlar, *Community Property and the Bankruptcy Act of 1978*, 11 St. Mary's L.J. 349, 382 (1979); *cf. Gonzales*

*v. Costanza (In re Costanza )*, 151 B.R. 588, 590 (Bankr.D.N.M.1993) ("I would add: if [the Devil] does not treat her better than his creditors, [Snow White] will, by divorcing him, deny his discharge.").

■ Rooz did not file a complaint in Roberta Kimmel's bankruptcy case, either as a nondischargeability action or as an objection to discharge, directed at either of the spouses.[6] Accordingly, Rooz long ago waived his right to assert that Roberta Kimmel's discharge does not enjoin him from attaching after-acquired community property to satisfy his claim against David Kimmel. Even if her wages remain community property notwithstanding the Postnuptial Agreement, David Kimmel's interest in that community property is immune pursuant to § 524(a)(3) from any attempt by Rooz to collect on the 1995 Judgment.

3. *Community property assets automatically become estate property when a bankruptcy case is commenced*

■ At oral argument, Rooz urged that, as a condition to a debtor receiving a discharge of community debts, the debtor must make community assets available for administration through the bankruptcy estate. On Roberta Kimmel's schedules of

---

**5.** Section 524(b)(2) provides:
(b) Subsection (a)(3) of this section does not apply if—
. . .
(2)(A) the court would not grant the debtor's spouse a discharge in a case under chapter 7 of this title concerning such spouse commenced on the date of the filing of the petition in the case concerning the debtor; *and*
(B) a *determination* that the court would not so grant such discharge *is made by the bankruptcy court within the time and in the manner provided for a determination under section 727* of this title of whether a debtor is granted a discharge.

(Emphasis added.)

**6.** As Rooz had notice of the Roberta Kimmel bankruptcy case at a time he was suing both spouses, none of the due process concerns attendant to lack of notice regarding the nondebtor spouse are present here. Pedlar, 11 St. Mary's L.J. at 385 & 389–90; *accord, In re Schmiedel*, 236 B.R. 393, 397–98 (Bankr. E.D.Wis.1999); *Seattle First Nat'l Bank v. Marusic (In re Marusic )*, 139 B.R. 727, 732 n. 3 (Bankr.W.D.Wash.1992); *In re Sweitzer*, 111 B.R. 792, 797–99 (Bankr.E.D.Wis.1990); 4 Collier on Bankruptcy ¶ 524.02[3][c].

current income and current expenses (Schedules I and J) filed in her bankruptcy case, she included no monthly income and no monthly expenses, and instead stated that she had "no income and depends entirely on her parents to provide for her needs." Rooz contends this demonstrates that Roberta Kimmel failed to contribute her community property wages for administration for the benefit of creditors. We disagree.

Section 541 is self effectuating. Roberta Kimmel's bankruptcy estate was created when she filed her voluntary chapter 7 petition; community property in which she had an interest automatically went into the estate by the mere fact of its existence. Whether it was listed on the schedules is irrelevant. To the extent back wages were owed to her at the time she filed her petition in 1993, they were subject to administration by the chapter 7 trustee.

Rooz did not challenge the accuracy of Roberta Kimmel's schedules in 1993 by questioning her entitlement to discharge or otherwise. Nor has he identified any property that existed but was not scheduled. Nor is there any indication that the trustee who administered Roberta Kimmel's bankruptcy estate failed to perform the trustee's duties under § 704, which include an obligation to collect property of the estate for the benefit of creditors and to investigate the financial affairs of the debtor.

Finally, whether Roberta Kimmel had no income in 1993 that became part of her bankruptcy estate is irrelevant to the application of her chapter 7 discharge to postpetition community property, such as postpetition wages.

The bankruptcy court correctly held that Roberta Kimmel's discharge enjoined Rooz from attaching her post-discharge wages, whether they were community property or separate property.

### 4. Post–Discharge Conduct Does Not Vitiate a Discharge

Rooz contends that Roberta Kimmel's post-discharge conduct in participating in the 1995 Postnuptial Agreement creates a new debt. His argument lacks merit for two independent reasons.

First, the chapter 7 discharge is absolute and, in light of the anti-waiver provisions of § 524(a), does not admit of an equitable exception that would permit it to be waived by postdischarge conduct. *Lone Star Sec. & Video, Inc. v. Gurrola (In re Gurrola*), 328 B.R. 158, 172 (9th Cir. BAP 2005). In the case of § 524(a)(3), the anti-waiver language is "whether or not discharge of the debt based on such community claim is waived." 11 U.S.C. § 524(a)(3).

For the reasons we explained in *Gurrola*, Congress was emphatic that the anti-waiver language in § 524(a) was "intended to prevent waiver of discharge of a particular debt from defeating the purposes of this section." *Gurrola*, 328 B.R. at 170 (quoting H.R. Rep. No. 95–595, at 366 (1977); S.Rep. No. 95–989, at 80 (1978)).

Second, a false premise underlies Rooz's theory that, by executing the Postnuptial Agreement, Roberta Kimmel made a fraudulent conveyance that rendered the 1995 Judgment uncollectible, thereby creating a new debt that is not discharged. The false premise is that, in the absence of the Postnuptial Agreement, the 1995 Judgment could have been collected from community property.

As we have explained, § 524(a)(3) enjoins any act "to collect or recover from" community property "that is acquired after commencement of the case, on account of an allowable community claim" that has

not been excepted from discharge in the bankruptcy case. 11 U.S.C. § 524(a)(3). Thus, it was impossible for the community property (Roberta Kimmel's future wages) that was transmuted into separate property to have been a source of recovery for Rooz. We agree with the bankruptcy court that Rooz's further efforts to collect from Roberta Kimmel's post-bankruptcy wages "likely violate [the discharge injunction of § 524] and expose [Rooz] to sanctions." *Kimmel,* 367 B.R. at 174 n. 11.

The Seventh Circuit decision in *McClellan v. Cantrell,* 217 F.3d 890, 895 (7th Cir.2000), upon which Rooz relies, does not support his theory. No relevant event in that case occurred post-bankruptcy. Rather, it involved a prepetition fraud, not involving a misrepresentation, that was perpetrated by the debtor in league with a sibling. The question was whether the term "actual fraud" in § 523(a)(2) encompassed more than situations in which there was a misrepresentation. The Seventh Circuit's answer in the affirmative merely served to sharpen the contours of what constitutes a nondischargeable prepetition "actual fraud" debt under § 523(a)(2) and has no bearing on the present case.

#### B.  *The Postnuptial Agreement*

In the proceedings before the bankruptcy court, the parties addressed at length the irrelevant question of the impact of the provisions of California's version of the Uniform Fraudulent Transfer Act ("UFTA"), codified at CAL. CIV.CODE §§ 3439 et seq., on the Postnuptial Agreement.

The bankruptcy court gave Rooz's UFTA argument short shrift because any such action was time-barred under CAL. CIV.CODE § 3439.09(c)[7] and because "if there were no time bar, Rooz's claim would be barred by the Bankruptcy Code [§ 524(a)(3)]." *Kimmel,* 367 B.R. at 170.

In view of the controlling effect of the community property discharge injunction imposed by § 524(a)(3), the bankruptcy court's conclusion (with which we have no quarrel) that the UFTA cause of action filed eleven years after the challenged transfer is barred was addressed to a moot point.

Regardless of whether the 1995 transmutation validly shifted Roberta Kimmel's future wages from community to separate property status, all wages she earned after filing her 1993 chapter 7 case were immune from enforcement of Rooz's 1995 judgment against David Kimmel, which was a discharged community claim as of 1994.[8]

#### C.  *The Rule 12(c) Motion*

Under Fed.R.Civ.P. 12(c), judgment on the pleadings is proper when, taking all the allegations in the non-moving party's pleadings as true, the movant is entitled to judgment as a matter of law. *Ventress,* 486 F.3d at 1114 (*quoting Fajardo v. County of Los Angeles,* 179 F.3d 698, 699 (9th Cir.1999)).

As we have explained, Roberta Kimmel's discharge operates to enjoin, as a matter of law under § 524(a)(3), any attempt by Rooz to collect the 1995 Judgment from Roberta Kimmel's property, be it her sepa-

---

**7.** Section 3439.09(c) of the California Civil Code provides:

Notwithstanding any other provision of law, a cause of action with respect to a fraudulent transfer or obligation is extinguished if no action is brought or levy made within

seven years after the transfer was made or the obligation was incurred.

**8.** Thus, Rooz's argument, made for the first time on appeal, that the Postnuptial Agreement was invalid because it was not recorded is unavailing.

rate property, or either her own or David Kimmel's interest in community property if the Postnuptial Agreement were set aside. The judgment on the pleadings was correct.

## VI. CONCLUSION

The court correctly determined that Rooz's claim, finalized in the 1995 Judgment, was a community claim (1) that was discharged in Roberta Kimmel's bankruptcy case, and (2) from which all interests in her future wages were insulated, regardless of whether her wages constitute community property. Accordingly, the order of the court dismissing the 2006 Litigation pursuant to its grant of the Rule 12(c) Motion is AFFIRMED.