# FILED

AUG 25 2014

**NOT FOR PUBLICATION**

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

## UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No.   CC-13-1437-KiLaPa |
| BARRY MICHAEL GOULD, | Bk. No.   1:12-11279-MT |
| Debtor. | Adv. No.   1:12-01168-MT |
| BARRY MICHAEL GOULD, | |
| Appellant, | |
| v. | **M E M O R A N D U M**[1] |
| RED HILL ENTERPRISES, | |
| Appellee. | |

Submitted Without Oral Argument
on May 15, 2014[2]

Filed - August 25, 2014

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Maureen A. Tighe, Bankruptcy Judge, Presiding

Appearances:   Appellant Barry Michael Gould, pro se, on brief;
James Charles Bastian, Jr. and Melissa Davis Lowe
of Shulman Hodges & Bastian LLP on brief for
appellee, Red Hill Enterprises.

---

[1] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

[2] In an order entered on March 10, 2014, the Panel determined that this matter was suitable for disposition without oral argument. Fed. R. Bankr. P. 8012; 9th Cir. BAP R. 8012-1.

Before: KIRSCHER, LATHAM[3] and PAPPAS, Bankruptcy Judges.

Debtor Barry Michael Gould ("Gould") appeals a judgment determining that a state court judgment in favor of appellee Red Hill Enterprises ("Red Hill") was excepted from discharge under § 523(a)(2)(A)[4] and (a)(6) on the basis of issue preclusion. We AFFIRM on the § 523(a)(6) claim, but on a ground not relied upon by the bankruptcy court. Because we are able to affirm on that basis, we do not express an opinion as to the court's decision to except the debt from Gould's discharge under § 523(a)(2)(A).

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A. Prepetition events

Red Hill's claims against Gould originate from a 1997 civil action prosecuted by Red Hill against Gould and his corporation, Learning Tree University ("Learning Tree"). Gould is the President and founder of Learning Tree. Learning Tree was in the business of selling vocational education services. In 1994, Gould formed LTU Extension, a for-profit corporation, to manage and run Learning Tree, a nonprofit corporation.

Judgment was entered against Gould and Learning Tree for $108,724.61 (the "1998 Judgment"). However, Gould compromised this claim by waiving his and Learning Tree's appellate rights in exchange for the 1998 Judgment being entered against Learning Tree only. Red Hill properly recorded liens against Learning Tree's

---

[3] Hon. Christopher Latham, Bankruptcy Judge for the Southern District of California, sitting by designation.

[4] Unless specified otherwise, all chapter, code and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. The Federal Rules of Civil Procedure are referred to as "Civil Rules."

assets in connection with the 1998 Judgment.

After Learning Tree stopped making payments on the 1998 Judgment in March 2002, Red Hill initiated collection efforts. The principal remaining on the debt at that time was about $51,000. Red Hill's writs on Learning Tree's accounts were returned unsatisfied because Learning Tree had no funds to levy. Red Hill later learned that Gould had transferred all of Learning Tree's funds to LTU Extension.

In 2002, the assets of Learning Tree and LTU Extension were sold to Corinthian Colleges, Inc. ("Corinthian") for $5.3 million, including a $3 million cash payment from Corinthian. After the sale, Corinthian, Gould, Learning Tree and LTU Extension executed a separate letter agreement wherein the 1998 Judgment was excepted from the asset sale. Red Hill alleged it never received notice of the sale, which prevented it from satisfying its judgment lien from the sale proceeds.

Red Hill filed a complaint in the Los Angeles Superior Court (the "LA Action") against Gould, Learning Tree and LTU Extension (collectively "Defendants"), with the operative pleading at the time of trial being its Third Amended Complaint ("TAC"). The TAC alleged claims for: (1) Unlawful Transfers under CAL. CIV. CODE § 3439 et seq.; (2) Conspiracy to Commit Unlawful Transfers; (3) Aiding and Abetting Fraudulent Transfers; (4) Conversion; (5) Money Had and Received; (6) Interference with Prospective Economic Advantage; and (7) Unfair Business Practices. Red Hill alleged that Gould was the alter ego of Learning Tree and LTU Extension.

In May 2005, the jury returned a verdict in favor of Red Hill

and a special verdict finding damages in the amount of $51,177.44. The special verdict included the following findings:

(a) Learning Tree, LTU Extension and Gould were liable for the fraudulent transfer of Learning Tree's assets;

(b) Learning Tree, LTU Extension and Gould were liable for conspiring with Learning Tree in the fraudulent transfer;

(c) Learning Tree, LTU Extension and Gould were liable for aiding and abetting the fraudulent transfer;

(d) Learning Tree, LTU Extension and Gould were liable for intentional interference with Red Hill's prospective economic advantage;

(e) Learning Tree, LTU Extension and Gould were liable for conversion;

(f) Learning Tree, LTU Extension and Gould were liable for money had and received;

(g) Gould was the alter ego of both Learning Tree and LTU Extension so as to make Gould personally liable for Red Hill's judgment against Learning Tree, and LTU Extension was the alter ego of Learning Tree; and

(h) Gould and LTU Extension acted with malice, fraud, or oppression towards Red Hill.

In March 2004, Learning Tree filed a chapter 7 bankruptcy case. Red Hill obtained relief from the automatic stay to proceed with its motion for attorney's fees in the LA Action. Learning Tree's bankruptcy case was closed in June 2007.

In 2010, after the appellate proceedings of the LA Action terminated, the state court entered judgment awarding damages of the special jury verdict plus interest, costs and fees related to

-4-

the appeals, for a grand total of $239,621.10, plus attorney's fees of $291,753.50 (the "2010 Judgment").[5] The 2010 Judgment ordered that Red Hill "recover on its actions for intentional fraudulent transfers, conversion, intentional interference with prospective economic advantage, and for money had and received against [Defendants] jointly and severally . . . ." Although a separate trial was to be held on the issue of punitive damages, Red Hill agreed to dismiss its right to recover punitive damages so it could expedite judgment collection proceedings; the state court vacated Red Hill's scheduled trial to determine punitive damages. The 2010 Judgment is final.[6]

**B.   Postpetition events**

Gould filed a chapter 7 bankruptcy case on February 9, 2012. Red Hill sought to except the 2010 Judgment from discharge under § 523(a)(2)(A) and (a)(6). Its claims relied on the same events and conduct from which the 2010 Judgment arose.

Red Hill contended its debt was excepted from discharge under § 523(a)(2)(A) because Gould (individually and as the alter ego of his two entities) had defrauded Red Hill when he diverted funds of Learning Tree to LTU Extension to prevent Red Hill from executing on its 1998 Judgment, and when he sold the assets of those two

---

[5] Gould appealed the initial judgment from 2005. The California Court of Appeal declined to reach the merits of Gould's arguments due to his deficient briefing and excerpts of record.

[6] Gould argues for the first time on appeal that the 2010 Judgment is not final because the appellate court did not review the merits of his arguments. Generally, we do not consider issues not raised before the trial court. See, e.g., United States v. Carlson, 900 F.2d 1346, 1349 (9th Cir. 1990 (issues not raised at the trial court ordinarily will not be considered for the first time on appeal). We decline to consider this issue.

-5-

entities to Corinthian excluding Red Hill's debt to be paid from the sale proceeds. Red Hill contended its debt was excepted from discharge under § 523(a)(6) because the jury had found Gould liable for conversion of Red Hill's collateral and the sale proceeds thereof, that such conversion was a substantial factor in causing harm to Red Hill, and that Gould and his alter ego LTU Extension had acted with malice, fraud, or oppression. Red Hill's damages totaled $531,374.60.

### 1. Red Hill's motion for summary judgment

Red Hill moved for summary judgment on the basis of issue preclusion (the "MSJ"). Red Hill contended that issue preclusion applied to the 2010 Judgment because the jury found that Gould's conduct in transferring Learning Tree's funds to LTU Extension, which prevented Red Hill from levying on its 1998 Judgment, in excluding the 1998 Judgment from being paid out of the sale proceeds and in converting those proceeds was fraudulent, malicious and oppressive. Specifically, Red Hill argued that Gould's fraudulent transfers under CAL. CIV. CODE § 3439.04(a)[7] —

---

[7] CAL. CIV. CODE § 3439.04(a) provides:

(a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation as follows:
(1) With actual intent to hinder, delay, or defraud any creditor of the debtor.
(2) Without receiving a reasonably equivalent value in exchange for the transfer or
obligation, and the debtor either:
    (A) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction.

continue...

-6-

made with the actual intent to hinder, delay or defraud Red Hill — met all of the elements for "actual fraud" under § 523(a)(2)(A), and the jury's findings that Gould acted with malice, fraud or oppression toward Red Hill also satisfied the elements for a willful and malicious injury under § 523(a)(6).

Gould opposed the MSJ, contending that Red Hill was not entitled to summary judgment because the 2010 Judgment did not satisfy the elements of issue preclusion: the issues were not identical; and they had not been actually litigated or necessarily decided in the LA Action. Specifically, Gould argued that Red Hill sought and obtained a judgment for "unlawful/fraudulent transfers," not "actual fraud," and the jury's finding did not specify whether Gould's intent with respect to the transfer was to hinder, to delay or to defraud Red Hill. Thus, contended Gould, whether he committed fraud was a triable issue of material fact precluding summary judgment.

Gould argued that Red Hill's claim under § 523(a)(2)(A) failed anyway because it had not established that he made any misrepresentations to Red Hill, that he made knowingly false representations to Red Hill, that he intended to deceive Red Hill, and that Red Hill justifiably relied on his false representations or which representations, if any, proximately caused Red Hill's damages. Gould argued that issue preclusion also did not apply to Red Hill's claim under § 523(a)(6) because the jury's finding that

⁷...continue
(B) Intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due.

-7-

he acted with malice, fraud, or oppression did not satisfy the requirements for a "willful and malicious" injury.

In reply, Red Hill argued that because Gould was found liable for "fraudulent transfer" under CAL. CIV. CODE § 3439.04(a), which requires actual intent, the jury necessarily found he committed "actual fraud." Thus, even if the jury found that Gould only tried to hinder or delay a creditor, the clear language of the statute necessarily meant a finding of actual fraud. Red Hill disputed Gould's contention that the jury's finding could have been for "constructive" fraudulent transfer. The TAC in the LA Action, as well as Red Hill's trial brief, referenced only actual fraudulent transfers under CAL. CIV. CODE § 3439.04. Further, the 2010 Judgment awarded recovery on Red Hill's "cause of action for intentional fraudulent transfer." Finally, the jury instructions spoke only to actual fraudulent transfers. Therefore, argued Red Hill, the jury's finding had to be one for actual fraud, not constructive fraud, so the issue of Gould's "fraud" had been litigated and necessarily decided.

Red Hill agreed that conversion under California law, without a showing of wrongful intent, will not satisfy the elements of a willful and malicious injury under § 523(a)(6). However, Red Hill argued that the jury specifically found Gould acted intentionally. Because it found Gould liable for intentional interference with Red Hill's prospective economic advantage, which requires an "intentional" and "wrongful" act, Red Hill argued the jury necessarily determined Gould had acted intentionally to cause injury or with substantial certainty of injury. Red Hill further argued that because the jury found fraud, it necessarily

-8-

determined Gould committed "intentional tortious conduct." Malice could be inferred from Gould's wrongful conduct.

### 2. The bankruptcy court's ruling

The bankruptcy court issued a lengthy tentative ruling in favor of Red Hill, which it later adopted as its final ruling. The preclusive elements of a final judgment on the merits and the same parties were not in dispute. The bankruptcy court concluded that Gould's "actual fraud" was at issue in the LA Action because the jury's findings, based on the instructions presented, were solely under CAL. CIV. CODE § 3439.04(a)(1). However, Red Hill's judgment for fraudulent transfer did not fall under the "usual" requirements for a § 523(a)(2)(A) claim; a "false representation" was missing. Therefore, whether Gould's actual fraud had been actually litigated and necessarily decided in the LA Action for purposes of § 523(a)(2)(A) was uncertain. Relying on McClellan v. Cantrell, 217 F.3d 890, 892-93 (7th Cir. 2000), which analyzed the term "actual fraud" in § 523(a)(2)(A) and extended the statute to include a debt for an actual fraudulent transfer claim, the bankruptcy court determined that the issue of Gould's fraudulent intent, proximate cause and damages had been actually litigated and necessarily decided by the jury.[8] Therefore, issue preclusion applied to the 2010 Judgment.

The bankruptcy court also decided that the jury's findings were sufficient to prove the "willful and malicious" elements of

---

[8] Neither the Ninth Circuit nor this Panel has endorsed or rejected in any reported decision the approach taken by the Seventh Circuit in McClellan. This Panel, in Rooz v. Kimmel (In re Kimmel), 378 B.R. 630, 639 (9th Cir. BAP 2007), distinguished McClellan on its facts and neither endorsed nor rejected its approach.

§ 523(a)(6). Specifically, the jury's finding of conversion, combined with its scienter finding of Gould's intentional interference with prospective economic advantage, established the requisite wrongful intent for a "willful" injury. Alternatively, the jury's finding of Gould's actual fraud also established this element. As for the "malicious" element, the evidence before the state court, including the jury instructions and the 2010 Judgment, demonstrated that the jury had found Gould's conversion was an intentional act that caused injury. In addition, the jury had found, by clear and convincing evidence, that Gould acted with malice, fraud or oppression. While conceding the jury verdict was not specific as to whether it found Gould had acted with malice, fraud or oppression, the bankruptcy court noted that malice could be inferred from the nature of Gould's wrongful act of conversion. Further, Gould was given an opportunity to present his justification and defenses to Red Hill's claims, but the jury necessarily rejected them. Therefore, a willful and malicious injury had been actually litigated and necessarily decided, and issue preclusion applied to the 2010 Judgment.

Because no genuine issue of material fact existed as to whether Gould actually defrauded Red Hill within the meaning of § 523(a)(2)(A) or whether he willfully and maliciously injured Red Hill within the meaning of § 523(a)(6), the bankruptcy court entered an order on September 4, 2013, granting the MSJ. In its concurrent judgment, the bankruptcy court determined that Red Hill's entire debt of $531,374.60, which included the jury award and the litigation costs incurred defending the jury verdict, was excepted from discharge. Gould timely appealed.

-10-

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(I). We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUES

1. In granting summary judgment to Red Hill on its § 523(a)(6) claim, did the bankruptcy court err in determining that issue preclusion was available, or abuse its discretion in applying issue preclusion to the 2010 Judgment?

2. In granting summary judgment to Red Hill on its § 523(a)(2)(A) claim, did the bankruptcy court err in determining that issue preclusion was available, or abuse its discretion in applying issue preclusion to the 2010 Judgment?

## IV. STANDARDS OF REVIEW

We review de novo the bankruptcy court's grant of summary judgment. Ghomeshi v. Sabban (In re Sabban), 600 F.3d 1219, 1221-22 (9th Cir. 2010); Cutter v. Seror (In re Cutter), 398 B.R. 6, 16 (9th Cir. BAP 2008).

We review de novo a bankruptcy court's determination that issue preclusion is available. Lopez v. Emerg. Serv. Restoration, Inc. (In re Lopez), 367 B.R. 99, 103 (9th Cir. BAP 2007); Khaligh v. Hadaegh (In re Khaligh), 338 B.R. 817, 823 (9th Cir. BAP 2006). Once we determine issue preclusion is available, we review whether applying it was an abuse of discretion. Id. A bankruptcy court abuses its discretion if it applied the wrong legal standard or its findings were illogical, implausible or without support in the record. TrafficSchool.com, Inc. v. Edriver Inc., 653 F.3d 820, 832 (9th Cir. 2011).

The question whether a claim is dischargeable presents mixed

-11-

issues of law and fact, which we also review de novo. <u>Peklar v. Ikerd (In re Peklar)</u>, 260 F.3d 1035, 1037 (9th Cir. 2001). Whether a creditor has proven an essential element of a claim under § 523(a) is a factual determination reviewed for clear error. See <u>Candland v. Ins. Co. of N. Am. (In re Candland)</u>, 90 F.3d 1466, 1469 (9th Cir. 1996). A finding is clearly erroneous if it is "illogical, implausible or without support in the record." <u>Retz v. Samson (In re Retz)</u>, 606 F.3d 1189, 1196 (9th Cir. 2010)(citing <u>United States v. Hinkson</u>, 585 F.3d 1247, 1261-62 & n.21 (9th Cir. 2009)(en banc)).

We may affirm on any ground supported by the record, even if the ground was not relied upon by the bankruptcy court. <u>Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency</u>, 322 F.3d 1064, 1076-77 (9th Cir. 2003).

## V. DISCUSSION

### A. Governing law

#### 1. Summary judgment standards

Under Civil Rule 56(a), applicable here through Rule 7056, summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Summary judgment should not be entered when there are disputes over facts that may affect the outcome of the suit under the governing law. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986). The moving party bears the initial burden of showing that no material factual dispute exists. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986); <u>Soremekun v. Thrifty Payless, Inc.</u>, 509 F.3d 978, 984 (9th Cir. 2007). When ruling on a motion for summary judgment, a court

-12-

must view all the evidence in the light most favorable to the nonmoving party. Cnty. of Tuolumne v. Sonora Cmty. Hosp., 236 F.3d 1148, 1154 (9th Cir. 2001).

### 2.    Issue preclusion standards

The doctrine of issue preclusion prohibits relitigation of issues adjudicated in a prior action. Child v. Foxboro Ranch Estates, LLC (In re Child), 486 B.R. 168, 172 (9th Cir. BAP 2013). Issue preclusion applies in exception to discharge proceedings. Grogan v. Garner, 498 U.S. 279, 284 n.11 (1991)(preclusion principles apply in discharge exception proceedings under § 523(a) to preclude relitigation of state court findings relevant to the dischargeability determination).  As required under 28 U.S.C. § 1738, the Full Faith and Credit Act, we apply the relevant state's preclusion principles. Far Out Prods., Inc. v. Oskar, 247 F.3d 986, 993 (9th Cir. 2001); Gayden v. Nourbakhsh (In re Nourbakhsh), 67 F.3d 798, 800 (9th Cir. 1995).

Under California law, issue preclusion bars relitigation of an issue if:  (1) the issue sought to be precluded is identical to that decided in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the issue was necessarily decided in the prior proceeding; (4) the judgment in the prior proceeding is final and on the merits; and (5) the party against whom preclusion is sought is the same, or in privity with, the party to the prior proceeding. Harmon v. Kobrin (In re Harmon), 250 F.3d 1240, 1245 (9th Cir. 2001)(citing Lucido v. Super. Ct., 51 Cal.3d 335, 341 (1990)).  In addition to meeting these threshold requirements, a California court may apply issue preclusion only if doing so furthers the underlying public

-13-

policies of preservation of the integrity of the judicial system, promotion of judicial economy, and the protection of litigants from harassment by vexatious litigation. Lucido, 51 Cal.3d at 342-43.

The party asserting issue preclusion bears the burden of proof as to all elements and must introduce a sufficient record to reveal the controlling facts and the exact issues litigated. Kelly v. Okoye (In re Kelly), 182 B.R. 255, 258 (9th Cir. BAP 1995), aff'd, 100 F.3d 110 (9th Cir. 1996). Any reasonable doubt as to what was decided by a prior judgment should be resolved against allowing issue preclusive effect. Id.

At the outset, we observe the fourth and fifth elements for application of issue preclusion to Red Hill's nondischargeability claims are satisfied: the 2010 Judgment is final and was on the merits; and the parties are the same. Accordingly, we review only the first three.

**B. The bankruptcy court did not err in determining that issue preclusion was available and granting summary judgment to Red Hill for its claim under § 523(a)(6).**

Section 523(a)(6) excepts from discharge debts "for willful and malicious injury by the debtor to another entity or to the property of another entity." Both willfulness and maliciousness must be proven in order to apply § 523(a)(6). Ormsby v. First Am. Title Co. of Nev. (In re Ormsby), 591 F.3d 1199, 1206 (9th Cir. 2010). "A 'willful' injury is a 'deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury.'" Barboza v. New Form, Inc. (In re Barboza), 545 F.3d 702, 706 (9th Cir. 2008)(quoting Kawaauhau v. Geiger, 523 U.S. 57, 61 (1998)(emphasis in original)). At a minimum, willful requires

-14-

a "deliberate act with knowledge that the act is substantially certain to cause injury . . . ." Petralia v. Jercich (In re Jercich), 238 F.3d 1202, 1208 (9th Cir. 2001). In other words, a debtor's act is "willful" only if he or she actually intended to cause injury or actually believed that injury was substantially certain to occur. Carrillo v. Su (In re Su), 290 F.3d 1140, 1144-45 (9th Cir. 2002).

Proving a "malicious" injury requires a showing that the debtor (1) committed a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) was done without just cause or excuse. Id. at 1146-47.

The bankruptcy court chose to apply issue preclusion to Red Hill's claim under § 523(a)(6) based on the jury's findings of conversion and intentional interference with prospective economic advantage. However, we opt to affirm on another basis supported by the record. Tahoe-Sierra Pres. Council, Inc., 322 F.3d at 1076-77.

A judgment for "actual" fraudulent transfer can satisfy the elements for a willful and malicious injury. In re Fairgrieves, 426 B.R. 748, 758 (Bankr. N.D. Ill. 2010). See Vazquez v. AAA Blueprint & Digital Reprographics (In re Vazquez), 2013 WL 6571693, at *4-6 (9th Cir. BAP Dec. 13, 2013)(affirming bankruptcy court's ruling that creditor's judgment for actual fraudulent transfer under CAL. CIV. CODE § 3439.04(a)(1) satisfied the elements for a willful and malicious injury under § 523(a)(6), so issue preclusion was properly applied).

Gould contends the bankruptcy court erred in "cran[ing] its neck to speculate" that the jury found him liable for an actual

-15-

fraudulent transfer under CAL. CIV. CODE § 3439.04(a)(1), when the jury might actually have determined he was liable for a constructive fraudulent transfer under CAL. CIV. CODE §§ 3439.04(a)(2) or 3439.05, which would not satisfy the statute.

In its TAC, Red Hill pled claims for unlawful/fraudulent transfer under CAL. CIV. CODE § 3439.04(a)(1), which codifies "actual fraud," and CAL. CIV. CODE § 3439.04(a)(2), which codifies "constructive fraud." Donell v. Kowell, 533 F.3d 762, 770 (9th Cir. 2008). Red Hill did not plead a claim under CAL. CIV. CODE § 3439.05 as Gould contends. The instructions submitted to the jury included an instruction for "actual fraud" with respect to the alleged transfers and an instruction concerning the "badges of fraud" the jury could consider to prove Gould's actual fraud. See CAL. CIV. CODE § 3439.04(b)(listing badges of fraud).

Although one jury instruction referenced Learning Tree's insolvency, which is an element for a constructive fraudulent transfer under CAL. CIV. CODE § 3439.04(a)(2), that jury instruction discusses insolvency as one of the many badges of fraud the jury could consider in determining whether Gould committed "actual fraud" (e.g., insolvency can be a "circumstance tending to show that the transfer was made with the intent to defraud creditors"). Notably, no jury instruction was presented about the Defendants not receiving reasonably equivalent value, which is a necessary element for a claim under CAL. CIV. CODE § 3439.04(a)(2).

Thus, because the jury instructions spoke only to a claim under CAL. CIV. CODE § 3439.04(a)(1) for "actual" fraudulent transfer, it follows that this was the only standard upon which the jury could have based its decision that Gould was liable.

-16-

Accordingly, the fact of Gould's intent was at issue in the LA Action. See Lucido, 51 Cal.3d at 342 ("The 'identical issue' requirement addresses whether 'identical factual allegations' are at stake in the two proceedings, not whether the ultimate issues or dispositions are the same.")

Gould also contends the issues of a willful and malicious injury within the meaning of § 523(a)(6) were not actually litigated and necessarily decided in the LA Action. The elements of a state court action are rarely identical to those for proving a willful and malicious injury. However, issue preclusion will apply if the facts established by the 2010 Judgment establishes that Gould's violation of CAL. CIV. CODE § 3439.04(a)(1) was a willful and malicious injury. We conclude the findings made by the jury establish both the willful and malicious prongs for purposes of nondischargeability under § 523(a)(6).

With the jury's finding of actual fraudulent transfer, it follows that Gould intended to cause injury to Red Hill or believed that injury was substantially certain to occur with his conduct of transferring Learning Tree's funds to LTU Extension to prevent Red Hill from levying on its 1998 Judgment. His willful intent is further shown by the following instruction the jury considered:

> It is not sufficient to hold Learning Tree University, LTU Extension, or B. Michael Gould liable for fraudulent transfers if you find that the only evidence supporting this claim are transfers of money between Learning Tree University and LTU Extension with the intent to defraud all of the LTU's creditors instead of just Red Hill Enterprises.

Given this instruction, and the jury's finding that Gould was liable to Red Hill for actual fraudulent transfer, the jury

-17-

necessarily found he intended to injure Red Hill specifically. Thus, a willful injury was actually litigated and necessarily decided. See In re Harmon, 250 F.3d at 1248 (if an issue was necessarily decided in a prior proceeding, it was actually litigated).

As for the "malicious" prong, a wrongful act is self-evident given the nature of Gould's conduct in transferring Learning Tree's funds to LTU Extension for the purposes of hindering Red Hill's collection efforts. By finding Gould liable for actual fraudulent transfer, the jury also necessarily found that Gould's acts were intentional. The jury further found, as stated in the 2010 Judgment, that the transfer of Learning Tree's assets was a substantial factor in causing harm or loss to Red Hill. Finally, because the jury found in favor of Red Hill on this claim, it unequivocally found that Gould's actions were not justified. In addition, the jury's finding that Gould acted with malice, fraud or oppression — a finding that subjected him to punitive damages and serves the purpose of punishing the wrongdoer — proves that his conduct was done without just cause or excuse.

Even if there were any truth to Gould's defense arguments he raised before the bankruptcy court, it would not as a matter of law constitute just cause or excuse for Gould's wrongful acts, given his specific intent to injure Red Hill. See Jett v. Sicroff (In re Sicroff), 401 F.3d 1101, 1107 (9th Cir. 2005)(holding that specific intent to injure negated proffered just cause or excuse for debtor's wrongful conduct). Therefore, a malicious injury was

-18-

actually litigated and necessarily decided.[9]

The facts established by the 2010 Judgment demonstrate that all the elements for a willful and malicious injury were at issue, actually litigated and essential to the jury's finding that Gould was liable for damages to Red Hill based on his actual fraudulent transfer. Therefore, all the elements for the application of issue preclusion have been met.

Although we have determined the 2010 Judgment is excepted from discharge under § 523(a)(6) on other grounds, the bankruptcy court did not err in giving the jury findings preclusive effect. Accordingly, because Red Hill satisfied its burden of demonstrating that no genuine issue of material fact existed as to the elements of a willful and malicious injury, the bankruptcy court also did not err in granting Red Hill summary judgment.[10]

## VI. CONCLUSION

For the foregoing reasons, we AFFIRM.

---

[9] Although Gould does not dispute the bankruptcy court's determination that policy considerations favored the application of issue preclusion to the 2010 Judgment, we see no error in that decision.

[10] Because we affirm the bankruptcy court's ruling that the 2010 Judgment was excepted from discharge under § 523(a)(6), we do not need to decide whether it erred in granting summary judgment to Red Hill on its claim under § 523(a)(2)(A).

-19-